**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARIS MOULE, On Behalf of Herself and All Others Similarly Situated, <br><br>                               Plaintiff, <br><br>       vs. <br><br> BP CORPORATION NORTH AMERICA, INC., BP AMERICA, INC., BP p.l.c., BP CORPORATION NORTH AMERICA INC. SAVINGS PLAN INVESTMENT OVERSIGHT COMMITTEE, ANTHONY B. HAYWARD, LAMAR MCKAY, GREGORY T. WILLIAMSON, STEPHANIE C. ATKINS, RICHARD DORAZIL, NEIL SHAW, THOMAS L. TAYLOR, STATE STREET BANK AND TRUST and JOHN DOES 1-10, <br><br>                        Defendants. | No.: 10 C 3990 <br><br> Related Cases: <br><br> 10 C 4026 <br> 10 C 4264 <br> 10 C  4337 <br> 10 C 4390 <br> 10 C 4448 <br><br> Judge Rebecca R. Pallmeyer |

**PLAINTIFFS' MOTION FOR ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1:
(1) CONSOLIDATING THE RELATED ERISA ACTIONS AND
(2) APPOINTING INTERIM CO-LEAD AND LIAISON COUNSEL**

Plaintiffs, Charis Moule, Jerry T. McGuire and Maureen S. Riely (the "Plaintiffs"), respectfully submit this Motion for Consolidation and Appointment of Interim Co-Lead and Liaison Counsel.

There are six (6) class actions pending in this District against BP p.l.c. ("BP") and other fiduciaries of several BP employee retirement benefits plans (collectively, "Plan") which

complaints allege breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 (collectively, "ERISA Actions").[1]

The ERISA Actions have been determined to be related and assigned to this Court for pretrial proceedings.[2] Plaintiffs now seek to (1) consolidate the ERISA Actions before Judge Pallmeyer and (2) appoint their selection of counsel in this litigation as Interim Co-Lead and Liaison Counsel to act on behalf of Plaintiffs and the proposed class in the consolidated ERISA action. Counsel for Plaintiffs have conferred with counsel for Defendants who do not expect they will oppose consolidation of the six cases pending in this District. Defendants' position on consolidation is made with prejudice to the pending proceedings before the Judicial Panel on Multidistrict litigation or any specific issues Defendants may have with Plaintiffs' motion and proposed order. Defendants take no position regarding the proposed leadership structure. Counsel for Plaintiffs have also conferred with counsel for plaintiffs in the related ERISA actions regarding counsel leadership structure. Specifically, counsel for Plaintiffs have proposed that an executive committee consisting of one law firm from each of the related ERISA actions work along with proposed Interim Co-Lead and Liaison Counsel. This proposal was not accepted.

---

[1] Additionally, another similar action is pending in the Southern District of New York: *Ralph Whitley v. BP p.l.c., et al.*, Case No. 10-CV-04935 (filed June 24, 2010). Transfer of the *Whitley* Action to this District and consolidation of the ERISA Actions before Judge Pallmeyer is the subject of a pending multidistrict litigation proceeding (MDL 2189). In addition, the related actions, as well as the *Whitley* action, have been designated by Defendants as related cases in MDL 2179 (*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*) and MDL 2185 (*In re BP p.l.c. Sec. Litig.*). Plaintiffs have opposed the consolidation of the related action with the actions in MDL 2179 and MDL 2185 through both written submissions and oral argument before the Panel on July 29, 2010.

[2] *See* Minute Orders in Case No. 10-CV-03990, finding *Arshadullah*, *Humphries* and *Riely* as related to *Moule*. (Docket Nos. 16, 21 and 24, respectively). *See also* Minute Order in Case No. 10-CV-04337, finding *McGuire* as related to *Moule* (Docket No. 10); Minute Order in Case No. 10-CV-04390, assigning *Mineman* to Judge Pallmeyer (un-numbered Docket entry dated July 14, 2010).

Counsel for plaintiffs in the related actions either agreed or are undecided as to whether the ERISA Actions should be consolidated.

In support of this motion, Plaintiffs rely on the attached exhibits and the contemporaneously filed Memorandum of Law.

Wherefore, Plaintiffs respectfully request that the Court consolidate the ERISA Actions for all purposes pursuant to Fed. R. Civ. P. 42(a) and appoint Milberg LLP, Harwood Feffer LLP and The Lanier Law Firm as Interim Co-Lead Counsel and Miller Law LLC as Interim Liaison Counsel in the consolidated action.

Dated: July 30, 2010                                   Respectfully submitted,

                                                      /s/ Marvin A. Miller
                                                      Marvin A. Miller
                                                      Matthew E. Van Tine
                                                      **MILLER LAW LLC**
                                                      115 S. LaSalle Street
                                                      Suite 2910
                                                      Chicago, IL 60603
                                                      Tel: (312) 332-2400

                                                      *Proposed Interim Liaison Counsel*
                                                      *for Plaintiffs*

                                                      Sanford P. Dumain
                                                      Lori G. Feldman
                                                      Arvind B. Khurana
                                                      **MILBERG LLP**
                                                      One Pennsylvania Plaza
                                                      New York, NY 10119
                                                      Tel: (212) 594-5300

                                                      Robert I. Harwood
                                                      Jeffrey M. Norton
                                                      Tanya Korkhov
                                                      **HARWOOD FEFFER LLP**
                                                      488 Madison Avenue, 8th Floor
                                                      New York, NY 10022
                                                      Tel: (212) 935-7400

3

W. Mark Lanier
Evan M. Janush
**THE LANIER LAW FIRM**
6810 FM 1960 West
Houston, TX 77069
Tel: (713) 659-5200

*Proposed Interim Co-Lead Counsel
for Plaintiffs*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARIS MOULE, On Behalf of Herself and All Others Similarly Situated, | No.: 10 C 3990 |
| Plaintiff, | Related Cases: |
| vs. | 10 C 4026 |
| BP CORPORATION NORTH AMERICA, INC., BP AMERICA, INC., BP p.l.c., BP CORPORATION NORTH AMERICA INC. SAVINGS PLAN INVESTMENT OVER SIGHT COMMITTEE, ANTHONY B. HAYWARD, LAMAR MCKAY, GREGORY T. WILLIAMSON, STEPHANIE C. ATKINS, RICHARD DORAZIL, NEIL SHAW, THOMAS L. TAYLOR, STATE STREET BANK AND TRUST and JOHN DOES 1-10, | 10 C 4264 <br> 10 C 4337 <br> 10 C 4390 <br> 10 C 4448 <br><br> Judge Rebecca R. Pallmeyer |
| Defendants. | |

<u>**PRETRIAL ORDER NO. 1**</u>

**WHEREAS**, there are six (6) related class actions pending in this District alleging breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), against BP p.l.c. ("BP") and other fiduciaries (collectively, "Defendants") of several BP employee retirement benefits plans (collectively, "Plan") on behalf of Plan participants and beneficiaries (collectively, "ERISA Actions"), namely: (1) *Charis Moule v. BP Corp. North America, Inc., et al.*, Case No. 10-CV-03990; (2) *Jerry T. McGuire v. BP Corp. North America, Inc., et al.*, Case No. 10-CV-04337; (3) *Maureen S. Riely v. BP Corp. North America, Inc., et al.*, Case No. 10-CV-04448; (4) *Syed Arshadullah et al. v. BP p.l.c. et al.*, Case No. 10-CV-04026;

(5) *Edward F. Mineman v. BP Corp. North America, Inc., et al.*, Case No. 10-CV-04390; and (6) *David M. Humphries  v. BP Corp. North America, Inc., et al.*, Case No. 10-CV-04264;

    **WHEREAS**, the ERISA Actions have been determined to be related and assigned to this Court for further pretrial proceedings;

    **WHEREAS**, the ERISA Actions involve common questions of law and fact;

    **WHEREAS**, the appointment of Interim Co-Lead and Liaison Counsel is appropriate and consistent with the recommendations of Fed R. Civ. P. 23(g) and 42(a), and the *Manual for Complex Litigation* (4th ed. 2009);

    **WHEREAS,** Plaintiffs' counsel in the ERISA Actions have reached an agreement that the ERISA Actions should be consolidated before a single judge; and

    **WHEREAS**, the Court considered the Motion for (1) consolidation of the ERISA Actions and (2) appointment of Interim Co-Lead and Liaison Counsel, as well as the Memorandum of Law and Exhibits in support thereof, and found good cause appearing therefore.

    **IT IS NOW HEREBY ORDERED THAT**:

    1.    The Motion is granted.

    2.    The ERISA Actions are consolidated for all purposes (the "Consolidated Action").  This Pretrial Order No. 1 (the "Order") shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in or is transferred to this Court and is consolidated with the Consolidated Action.

    3.    A Master File is established for this proceeding.  The Master File shall be Civil Action No. 1:10 C 3990.  The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

    4.    An original of this Order shall be filed by the Clerk in the Master File.

5.     Every pleading in the Consolidated Action shall have the following caption:

| | | |
|---|---|---|
| IN RE BP ERISA LITIGATION | ) | No. 10 C 3990 |
| | ) | Judge Rebecca R. Pallmeyer |
| | ) | |

6.     Plaintiffs' selection of Milberg LLP, Harwood Feffer LLP, and the Lanier Law Firm to serve as Interim Co-Lead Counsel is approved.  Milberg LLP, Harwood Feffer LLP, and the Lanier Law Firm are hereby appointed Interim Co-Lead Counsel in the Consolidated Action.

7.     Interim Co-Lead Counsel shall have the authority to perform or delegate the performance of the following matters on behalf of all Plaintiffs in the Consolidated Action:

a.     Preparing and filing a consolidated complaint;

b.     Directing, coordinating and supervising the prosecution of Plaintiffs' claims in the Consolidated Action;

c.     Initiating, responding to, scheduling, briefing, and arguing all motions;

d.     Appearing at all hearings and conferences regarding the case;

e.     Determining the scope, order and conduct of all discovery proceedings;

f.     Assigning work to all plaintiffs' counsel as necessary and appropriate under the circumstances;

g.     Retaining experts;

h.     Communicating with the Court;

i.     Communicating with Defendants' counsel;

j. Conducting settlement negotiations on behalf of named plaintiffs and the class in the Consolidated Action;

k. Collecting and reviewing time and expense records from all plaintiffs' counsel on a monthly basis and at the conclusion of the case, as necessary and appropriate under the circumstances, and if appropriate, submitting a fee and costs application;

l. Coordinating activities to avoid duplication and inefficiency in the filing, serving, and/or implementation of pleadings, other court papers, discovery papers, and discovery practice, and, generally, in the litigation; and

m. Performing such other duties that may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the Court.

8. Interim Co-Lead Counsel shall have authority to communicate with Defendants' counsel and the Court. Interim Co-Lead Counsel shall also have the authority to enter into agreements with Defendants' counsel that are binding on all named plaintiffs and the class in the Consolidated Action.

9. No motion shall be initiated or filed on behalf of any plaintiff in the Consolidated Action except through the Interim Co-Lead Counsel, and no work shall be performed by any other plaintiff's counsel except at the express direction of the Interim Co-Lead Counsel.

10. To the extent any other plaintiff's counsel is designated by Interim Co-Lead Counsel to assist with the prosecution of this action, all such plaintiffs' counsel shall keep contemporaneous time and expense records, in the form requested by Interim

Co-Lead Counsel, and shall provide such records on a monthly basis to the Interim Co-Lead Counsel, or as otherwise requested by Interim Co-Lead Counsel.

11.     Miller Law LLC is appointed Interim Liaison Counsel for plaintiffs in the Consolidated Action.

12.     Interim Liaison Counsel shall act at the direction of Interim Co-Lead Counsel and shall assist Interim Co-Lead Counsel in facilitating coordination and communications among counsel for the parties and with the Court, and otherwise assist in the coordination of discovery, presentations at pretrial conferences, other pretrial activities and trial.

13.     Service of pleadings and other papers by Defendants shall be made only upon Interim Co-Lead and Liaison Counsel, which are authorized and directed to accept service on behalf of all plaintiffs in this Consolidated Action and any later actions consolidated herewith.

14.     The parties shall confer regarding the scheduling of the filing of a consolidated class action complaint and Defendants' response thereto, including briefing on any motion by any Defendant directed at the consolidated complaint, and shall submit a proposed schedule for the Court's approval. The consolidated complaint shall be the operative complaint and shall supersede all complaints filed in any of the actions consolidated herein.  Pending filing and service of the consolidated complaint, Defendants shall have no obligation to move, answer or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them.

15.     Service of pleadings and other papers by Plaintiffs and Defendants shall be made by ECF, unless otherwise excepted from ECF filing requirements by the local rules of this Court; and if any filing or service is not required or permitted to be made by ECF then Plaintiffs and/or Defendants shall contemporaneously serve electronic versions of the papers on all parties.

IT IS SO ORDERED.

Dated this ___ day of _____, 2010.

_____
Rebecca R. Pallmeyer
United States District Judge

# EXHIBIT 2



NEW YORK
LOS ANGELES
TAMPA
DETROIT

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, including securities, corporate fiduciary, ERISA, consumer, insurance, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, Tampa, and Detroit.

In the Firm's early years, its founding partners built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System* ("*WPPSS*") *Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (estimated $9 billion judgment, claims procedure pending); *Tyco International Ltd. Securities Litigation* ($3.2 billion settlement); *Nortel Networks Litigation* (settlement for cash and stock valued at $1.142 billion); *Lucent Technologies Securities Litigation* ($600 million recovery); *Raytheon Co. Securities Litigation* ($460 million recovery); *Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *WPPSS Securities Litigation* (settlements totaling $775 million), and the *NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

Milberg is consistently active in *pro bono* litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust, and the Firm's efforts representing claimants of the September 11 Victim Compensation Fund.

The Firm's lawyers come from many different professional backgrounds. They include former judges, professors, prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, a full-time staff of forensic accountants and financial analysts, and an in-house litigation support department with data hosting capabilities, staffed by electronic discovery specialists.

For more information, please visit www.milberg.com.



## JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in the three-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in the largest verdict on record in that type of case (totaling as much as $9 billion; claims procedure pending).  At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench.  I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335 (D.N.H. Dec. 19, 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case.  Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis.  But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . .  Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . .  Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action.  Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . .  [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved.  [Milberg was] extraordinarily deft and efficient in handling this most complex matter.  [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . .  In short, it would be hard to equal the skill class counsel demonstrated here.



In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again. The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . . [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out. I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).



## NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The claims procedure is pending and could potentially result in a judgment of up to $9 billion. The district court had previously certified a class of purchasers from the U.S., France, England, and the Netherlands. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007).

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 6, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck & Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved



settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.).  This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock.  The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.).  Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA.  This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.).  In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund.  In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal.  On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds.  The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.).  In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, No. 99-12142 (D. Mass.).  This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts.  In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings.  Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy



Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109

(S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark securities case that resulted in a recovery exceeding $4 billion for certain Prudential policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, No. 94-3996 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ



market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

• *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

• *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

• In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

• *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

• *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

• In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

• *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million,



including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- In *In re Comverse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the

amendment of the company's bylaws to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the Compensation Committee and a majority of the non-employee members of the Board.

- *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cty.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.



NEW YORK
LOS ANGELES
TAMPA
DETROIT

## PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- In *Merck & Co., Inc. v. Reynolds* (U.S. 2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred. Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations. This decision is significant in that it potentially enables plaintiffs to bring claims based on misstatements that are more than two years old.

- *In re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that the plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent. Pfizer's petition for review of the Second Circuit's ruling by the United States Supreme Court is currently pending.

- *In re Comverse Technology, Inc. Derivative Litigation*, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class



action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as

having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording



artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.



- ***Hasan v. CleveTrust Realty Investors***, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- ***Fox v. Reich & Tang, Inc.***, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom*, ***Daily Income Fund, Inc. v. Fox***, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- ***Rifkin v. Crow***, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- ***Blackie v. Barrack***, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- ***Bershad v. McDonough***, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- ***Heit v. Weitzen***, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.



*Partners*

**JEROME M. CONGRESS** received an A.B. degree with honors from Cornell University. From 1960 to 1962, he was a Fulbright Scholar at Oxford University, England, where he studied philosophy, politics and economics. He received an LL.B. degree *cum laude* from Harvard Law School, where he was an editor of *Harvard Law Review* during 1963-1964.

Since graduating from law school, Mr. Congress has spent the bulk of his practice in commercial and securities litigation.

Mr. Congress is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**MICHAEL C. SPENCER** graduated from Yale University in 1973 with a B.A. degree, *magna cum laude*, with distinction, in philosophy. While at Yale, he was elected to Phi Beta Kappa. Mr. Spencer received a J.D. degree from Harvard Law School, *cum laude*, in 1976.

Mr. Spencer focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation.

Mr. Spencer began his legal career as a law clerk to the Honorable Wm. Matthew Byrne Jr., United States District Court, Central District of California, in 1976-77. He then returned to New York and joined Cravath, Swaine & Moore as an associate, where he worked until 1986 on antitrust, banking, real estate, commercial, and securities litigation matters. In his later years at Cravath, he represented the bond fund trustee in connection with bond defaults of Washington Public Power Supply System nuclear plants.

In 1986, he joined Milberg as an associate and became a partner later that year. He worked on the WPPSS securities fraud litigation and many of the Firm's other cases, including representation of the FDIC in its failed bank audit litigation involving the Butcher Brothers banks in Tennessee, which led to a year-long trial and a global settlement of all bank-related claims against Ernst & Whinney just before closing arguments to the jury in late 1992. He has since worked on many of the Firm's securities fraud cases, and cases in other areas, including representation of a broad coalition of union health care funds seeking to recover costs for treating smoking-related illnesses from the tobacco industry; Year 2000 litigation; cases involving alleged kickbacks in the mortgage insurance industry; and consumer and securities fraud cases against insurance companies selling deferred annuities into qualified retirement plans.

He was one of the principal trial counsel for plaintiffs in *In re Vivendi, S.A. Securities Litigation* (S.D.N.Y.), a securities fraud class action in which the jury returned a multi-billion-dollar verdict in January 2010. He is presently handling post-trial motions and defendant's anticipated appeal. The case is notable for the size of the verdict and for inclusion of investors from France, England, and the Netherlands, as well as the United States, in the certified class. The results of this case are expected to have a broad impact on future securities fraud class action litigation in the U.S. and internationally.

Mr. Spencer is admitted to practice in the courts of the States of New York and California, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Central District of California, and the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Eleventh, and D.C. Circuits.

**ROBERT A. WALLNER** received his B.A. degree from the University of Pennsylvania in 1976 graduating *magna cum laude*. He attended New York University School of Law, earning his J.D. degree in 1979. He was elected to the law school's Order of the Coif and served as an editor of *New York University Law Review*.

Prior to joining Milberg, Mr. Wallner was associated with Cravath, Swaine & Moore.

While at Milberg, Mr. Wallner has litigated complex securities, consumer, and antitrust class actions throughout the country. He currently represents investors in *In re Initial Public Offering*

*Securities Litigation* (S.D.N.Y) and *In re CMS Energy Corporation Securities Litigation* (E.D. Mich.). He has also represented consumers in *In re Synthroid Marketing Litigation* (N.D. Ill.) and the *Mercedes-Benz Tire Litigation* (D.N.J.).

Mr. Wallner is a frequent lecturer on securities and complex litigation issues, and serves on the editorial board of *Securities Litigation Report*, published by West Legalworks. He served as a member of the Federal Courts Committee of the Association of the Bar of the City of New York, and as a faculty member of the American Bar Association's First Annual National Institute on Securities Litigation and Arbitration. Mr. Wallner is a member of the New York bar.

**SANFORD P. DUMAIN** attended Columbia University where he received his B.A. degree in 1978. He graduated *cum laude* from Benjamin N. Cardozo School of Law of Yeshiva University in 1981.

Mr. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud, and violations of the antitrust laws.

Mr. Dumain was co-lead counsel in the *Tyco Securities Litigation* in which $3.2 billion was recovered for investors. Mr. Dumain also served as lead counsel in the securities class actions against Nortel and Biovail, which are the highest and third highest recoveries ever in cases involving Canadian companies. The *Nortel* settlement was valued at over $1 billion and *Biovail* settled for over $138 million in cash. Mr. Dumain successfully represented the City of San Jose, California against 13 of the City's broker-dealers and its outside accountants in connection with major losses in unauthorized bond trading.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, United States District Court for the District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

Judge Janet C. Hall of the District of Connecticut made the following comment in *In re Fine Host Securities Litigation* (No. 97-2619): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice in the State of New York, United States District Court for the Southern and Eastern Districts of New York, District of Colorado, and District of Connecticut, and United States Courts of Appeals for the First, Second, Third, Sixth, Seventh, and Eighth Circuits.

Mr. Dumain is the Chair of the Firm's Executive Committee.

**GEORGE A. BAUER III** earned his B.B.A. degree *magna cum laude* in 1976 from Bernard M. Baruch College of the City University of New York, where he majored in accounting. He was awarded the Andrew J. Coppola prize in Law from Baruch College. Mr. Bauer attended New York University School of Law and graduated with a J.D. degree in 1979.

Mr. Bauer's practice concentrates on class action settlements and settlement administration. He has played a lead role in documenting and effectuating many of the largest and most complex securities litigations settlements ever obtained, notably including: the $3.2 billion cash settlement in *In re Tyco International Ltd., Securities Litigation, MDL 02-1335-PB (U.S.D.C., N.H.)*; the $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation* No. 01-1855 (S.D.N.Y.); the $1.027 billion settlement of the *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, (S.D.N.Y.); settlements relating to the $2 billion estate of Drexel Burnham Lambert, including *In re Drexel Burnham Lambert Group*, No. 90-6954 (S.D.N.Y.) and the $1.3 billion settlement of the *In re Michael Milken & Associates Securities Litigation*, MDL 924 (S.D.N.Y.); settlements worth over $775 million in *In re Washington Public Power Supply Systems Securities Litigation*, MDL 551 (D. Ariz.); settlements including cash and securities worth over $615 million in *In re Lucent Technologies Inc. Securities Litigation*, No. 00-621 (D. N.J.); the settlement for cash and securities worth over $460 million in *In re Raytheon Securities Litigation, No. 99-12142* (D. Mass.); the $334 million settlement in *In re Rite Aid, Securities Litigation, Master File No. 99-1349* (E.D.PA); the $300 million settlement in *In re Oxford Health Plans Inc., Securities*

*Litigation, MDL No. 1222 (CLB)* (S.D.N.Y.; the $215 million settlement of *In re Sears Roebuck & Co., Securities Litigation, No. 02-7527* (N.D. Ill.); the $200 million settlement in *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.); the settlement for cash and securities worth over $137.5 million in *In re Microstrategy Inc. Securities Litigation*, No. 00-473 (E.D. Va, Alexandria Division); the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation*, No. 98-4839, and *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-1226 (E.D.N.Y.); and the $110 million settlement in *In re Prudential Securities Inc. Limited Partnerships Securities Litigation*, MDL 1005 (S.D.N.Y.).

Mr. Bauer was admitted as a member of the New York bar in January 1980 and is also admitted to the United States District Court for the Southern and Eastern Districts of New York. Mr. Bauer is admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the Second and Fourth Circuits.

Mr. Bauer is a member of the Firm's Library Committee. He is also a member of the American Bar Association, the New York State Bar Association, the American Association for Justice, and the New York County Lawyers Association.

Mr. Bauer is a member of the Board of the Association for the Help of Retarded Citizens, Inc., a non-profit IRS 501(c)(3) qualified charitable organization, dedicated to the optimization of the prospectus for persons with developmental challenges.

**BARRY A. WEPRIN** graduated from Harvard College in 1974. He received a J.D. degree from the New York University School of Law in 1978, and a master of public affairs from the Woodrow Wilson School of Princeton University in 1978. While in law school, Mr. Weprin was notes and comments editor of *New York University Law Review*.

Since joining Milberg in 1989, Mr. Weprin has specialized in securities and insurance litigation. He has served as co-lead counsel in a number of complex securities class action litigations, including *In re AremisSoft Securities Litigation* (D.N.J.), *In re All Star Inns Securities Litigation* (S.D.N.Y.), *In re York Research Securities Litigation* (S.D.N.Y.), and

*Bharucha v. Reuters, PLC* (E.D.N.Y.). He was one of the principal attorneys in the sales practice litigations against The New York Life Insurance Company, The New England Life Insurance Service Company, The John Hancock Mutual Life Insurance Company, and The Prudential Life Insurance Company.

Previously, Mr. Weprin served as law clerk to the Honorable Charles P. Sifton of the United States District Court for the Eastern District of New York. Prior to joining Milberg, he was associated with the law firm of Wachtell Lipton Rosen & Katz, where he specialized in commercial and securities litigation. From 1985 to 1989 he served as general counsel to the New York State Housing Finance Agency and the New York State Medical Care Facilities Finance Agency, two agencies that issue tax exempt bonds for financing nonprofit medical facilities and qualified housing projects.

In approving the settlement in the *Allstar Inns* case, Judge Peter Leisure stated:

We have a situation here which is a classic example of the benefits to be derived through the class action vehicle, to have the high quality representation of the class. The reputation of counsel . . . Barry Weprin of Milberg Weiss, precedes them to this court and I'm familiar in other matters with the case in which these lawyers work.

The class was indeed fortunate to have lawyers of this caliber on this matter and the court is satisfied that the class was well-represented and had the benefits of the quality of representation that would not have otherwise been available if the class action vehicle had not been used.

Mr. Weprin is a frequent lecturer on complex litigation issues.

Mr. Weprin is a member of the American Bar Association, the Association of the Bar of the City of New York, the New York County Lawyers Association, and the New York State Bar Association. Mr. Weprin is admitted to practice in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

**RICHARD H. WEISS** received an A.B. degree *summa cum laude* from Princeton University in 1979. In 1980, he received an M.Phil. degree in international relations from Cambridge University,

England. He graduated from Yale Law School in 1983.

Richard Weiss has been at Milberg since 1990, and has been a partner of the Firm since 1993. His practice focuses primarily on class actions on behalf of defrauded investors, as well as other complex civil litigation. Mr. Weiss currently is one of plaintiffs' lead counsel in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.* (N.D. Ill.), in which the United States Supreme Court set the pleading standard for all federal securities fraud cases. Mr. Weiss is also one of the attorneys leading the prosecution of the Merck/Vioxx securities litigation.

Mr. Weiss is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit and various other federal appellate courts, and the United States Supreme Court. Mr. Weiss is a member of the Firm's Diversity Committee.

**BRAD N. FRIEDMAN** specializes in various complex commercial matters, including securities, bankruptcy, consumer, and life insurance class actions. Mr. Friedman began his legal career as a clerk to the Honorable Max Rosenn, United States Court of Appeals for the Third Circuit. Mr. Friedman has recovered billions of dollars on behalf of injured plaintiffs, including as lead counsel in numerous "vanishing premium" and "churning" life insurance sales practice class actions (including cases against Prudential and Metropolitan Life). In 2002, Mr. Friedman acted as lead counsel on behalf of various asbestos committees in the W.R. Grace bankruptcy and successfully recovered approximately $1 billion through a fraudulent conveyance litigation that settled on the eve of trial. In Xerox he recovered $750 million for shareholders. Mr. Friedman is currently representing numerous individuals and organizations victimized by the Bernard Madoff ponzi scheme.

Mr. Friedman is a member of the Firm's Executive Committee. He is also a member of the Federal Bar Council, the American Bar Association, the American Trial Lawyer Association, the New York State Bar Association and the New York City Bar Association.

**JOSHUA H. VINIK** graduated with honors from the State University of New York at Oneonta in 1983, where he majored in economics. After graduating *cum laude* from Brooklyn Law School, Mr. Vinik clerked for Magistrate (now Judge) Carol B. Amon of the United States District Court for the Eastern District of New York.

Mr. Vinik's practice focuses primarily on class actions on behalf of defrauded investors, as well as complex commercial litigation, including accountants' liability actions and derivative actions. Mr. Vinik's extensive litigation efforts on behalf of aggrieved investors include many actions which have led to significant recoveries for investors, including *In re Baan Securities Litigation* (D.D.C.); *Lasky v. Brown (United Companies Financial Securities Litigation)* (M.D. La.), *Kaufman v. Motorola, Inc.* (N.D. Ill.), and *In re Salomon Inc. Shareholders Derivative Litigation* (S.D.N.Y.).

Mr. Vinik is a member of the American Bar Association, The New York State Bar Association and the Association of the Bar of the City of New York. Mr. Vinik is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second, Third, and Fifth Circuits.

**JEFF S. WESTERMAN** received his B.A. degree from Northwestern University in 1977, where he was selected to be a member of two senior honorary societies. He received his J.D. degree from the University of Pittsburgh in 1980, where he was a member of the Law Review.

Mr. Westerman's practice is primarily in the areas of securities fraud class actions, shareholder derivative actions, and corporate mergers and acquisition litigation. He has served as lead or co-lead counsel in cases resulting in significant corporate governance changes, and resulting in plaintiff recoveries and recognized increased value to plaintiffs totaling more than $800 million. In 2005, *The Daily Journal* recognized him as one of the top 30 securities litigators in California.

Mr. Westerman has also been the moderator or speaker for programs on complex litigation, developments in class action practice, settlements, the Sarbanes-Oxley Corporate Responsibility Act, shareholder derivative actions and trends in business litigation.

Mr. Westerman was a member (2001-2003) and Co-Chair (2002-2003) of the Central District of California Attorney Delegation to the United States Ninth Circuit Judicial Conference. He serves on the Central District of California, U.S. Magistrate Judge Merit Selection Panel (2003-present) and the standing committee on Attorney Discipline (2004-present). He is also a member of the Central District of California Attorney Settlement Officer Panel (1998-present).

Mr. Westerman was the president of the Association of Business Trial Lawyers (2004-2005); a member of the Board of Governors (1997-2005), Treasurer (2001-2002), Secretary (2002-2003) and Vice President (2003-2004). He is also on the Board of Governors of the Consumer Attorneys Association of Los Angeles (2003-present).

Mr. Westerman is a member of the Los Angeles County Bar Executive Committee for the Litigation Section and the Board of the Los Angeles Chapter of the Federal Bar Association. He is also Chair of the LA County Bar Complex Courts Bench-Bar Committee, and a member of the Bench-Bar Civil Courts Committee; and served as Judge Pro Tem in the Los Angeles Small Claims Court in 1987-1988, 1990, 1992-1993 and 1996-1997. He is a member of the Los Angeles County and Federal Bar Associations. He was on the California State Bar Task Force on Complex Litigation, and Chair of the Judicial Education Subcommittee (1997). In 2007, he was named one of Lawdragon's 3000 Leading Plaintiffs' Lawyers In America.

Mr. Westerman is admitted to practice in the courts of the State of California, as well as the United States District Courts in California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**JANINE L. POLLACK** graduated from Rutgers University in 1986, with high honors, with a B.A. She majored in English and French and was a member of Phi Beta Kappa. In 1989, Ms. Pollack earned her J.D. from the University of Pennsylvania School of Law, where she was a member of the International Journal of Business Law.

Since joining Milberg in 1991, Ms. Pollack has prosecuted numerous class actions, including securities, consumer fraud, sex discrimination, and annuities cases. She is a member of the Firm's Hiring Committee; runs the Firm's CLE program; and is in charge of, and a mentor in, the Firm's Mentor program. Ms. Pollack has spoken at numerous conferences and CLE programs, including Mealey's and the Firm's in-house CLE program.

Ms. Pollack is co-chair of the Committee on Cy Pres for the Justice Center, the pro bono affiliate of the Association of the Bar of the City of New York. In addition, she is co-chair of the Women's Initiative for the National Association of Shareholder and Consumer Attorneys.

Ms. Pollack is admitted to bars of the States of New York and New Jersey. She is admitted to practice before the United States District Courts for the District of New Jersey and the Southern and Eastern Districts of New York.

**KIRK E. CHAPMAN** graduated *cum laude* from Harvard University in 1985 with a B.A. degree in biochemistry. He received his J.D. in 1989 from the University of Chicago where he was a member of the *Legal Forum* publication. Mr. Chapman's major practice areas are securities fraud class actions and employment discrimination matters.

Mr. Chapman is admitted to practice in the Courts of the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York.

**ARIANA J. TADLER** has been a partner at Milberg LLP since January 2001 and is an elected member of the Firm's Executive Committee. She has extensive experience litigating complex securities class actions, including high profile, fast-paced cases. She is also widely recognized as a specialist in electronic discovery.

Ms. Tadler's accomplishments include litigation of three cases in the Eastern District of Virginia (a/k/a the "Rocket Docket") in less than four years, including in *In re MicroStrategy Securities Litigation*, in which plaintiffs' counsel negotiated settlements valued at more than $150 million. Ms. Tadler is one of the court appointed plaintiffs' liaison counsel in the *Initial Public Offering Securities Litigation*, in which the court approved a $586 million cash settlement in October 2009 (appeal pending). Among the thousands of defendants in this coordinated action are 55 prominent investment banks and more than 300 corporate issuers.

Ms. Tadler is co-chair of the Steering Committee for The Sedona Conference© Working Group I on Electronic Document Retention and Production, the leading "think tank" on e-discovery. She also serves on the Advisory Board of Georgetown University Law Center's Advanced E-Discovery Institute.

Ms. Tadler maintains an "AV" for her legal ability, the highest rating available in Martindale-Hubbell's peer review rating system. Recognized in the past by Lawdragon, Ms. Tadler has been selected as one of the 2010 Lawdragon 500 Leading Lawyers in America.

Ms. Tadler regularly chairs or lectures at national and international conferences. Ms. Tadler's notable speaking engagements include: Duke University School of Law: 2010 Advisory Committee Conference on Civil Rules (May 2010); State Bar of Texas E-Discovery and Digital Evidence Institute (May 2010); The Sedona Conference - 12th Annual Conference on Complex Litigation (April 2010); Georgetown University Law Center - 2010 E-Discovery Training Academy (March 2010); Italy: IV Seminario Ul Diritto Dei Consumi (*Seminar on Consumer Law* - "Class Actions in the United States") (March 2010); The Sedona Conference - Training Program on eDiscovery Dispute Resolution for Special Masters & Mediators (January 2010); Georgetown University Law Center - Federal Judges E-Discovery Training Program (September 2009); Federal Bar Council - 2009 Winter Bar & Bench Conference (February 2009).

Ms. Tadler chairs the Firm's E-Discovery Committee, co-chairs the Firm's Outreach Committee and is a member of the Hiring, Diversity, Technology, and Women's Committees. She is a member of the American Bar Association, the American Association for Justice, the New York State Bar Association, the New York County Lawyers Association, the Federal Bar Council, the New York Women's Bar Association, and The New York Inn of Court. Ms. Tadler is a provisional member of the Academy of Court-Appointed Masters.

Ms. Tadler is also involved in various charity and community organizations. She currently serves on the Executive Committee of MFY Legal Services, Inc., a non-profit organization that seeks to provide disadvantaged New Yorkers equal access to the judicial system through community-based representation.

Ms. Tadler graduated from Hamilton College in 1989. In 1992, she received her J.D. from Fordham University School of Law, where she was the Articles and Commentary Editor of the Fordham Urban Law Journal, a member of the Moot Court Board, and the 1990 recipient of the American Jurisprudence Award in Criminal Law.

**LORI G. FELDMAN** is a daughter of retired public employees and understands the importance of protecting the investments of employees, as well as the general public, against corporate fraud and breaches of fiduciary duty.

In addition to lecturing on class action practice, Ms. Feldman has served as co-chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington. She was also named a "Rising Star of Washington Law" by practitioners in Seattle. Recently, Ms. Feldman has participated as panel faculty in national continuing legal education programs on ERISA and securities fraud class actions arising from the subprime and liquidity crisis.

Ms. Feldman's representative recoveries exceed well over $100 million. Recently, she recovered millions of dollars for class members in litigation against General Electric Co. (N.D.N.Y.) and Rhythms Net Connections (D. Colo.), among others. She is currently representing shareholders in litigation involving Washington Mutual, Inc. (W.D. Wash.), and Gilead Sciences, Inc. (N.D. Cal.), cases where plaintiffs received favorable appellate court opinions on the issues of scienter (*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)) and loss causation (*In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008)). She is also currently representing participants of defined contribution retirement plans in ERISA litigation involving, among others, Morgan Stanley & Co., Inc. (S.D.N.Y.), Macy's, Inc. (S.D. Ohio), Boston Scientific Corp. (D. Mass.), Fremont General Corp. (C.D. Cal.), Wellpoint, Inc. (S.D. Ind.), The Colonial Banc Group, Inc. (D. Al.), Textron, Inc. (D.R.I.), AIG (S.D.N.Y.), Lehman Brothers (S.D.N.Y.), The Hartford Financial Services Group (D. Conn.), and Constellation Energy Group (D. Md.).

Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review*. She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York. She is admitted to the bars of the States of Washington and New York and federal district and appellate courts throughout the country.

**BENJAMIN Y. KAUFMAN** earned his B.A. degree from Yeshiva University in 1988 and his J.D. degree from Benjamin N. Cardozo School of Law in 1988, where he was a Belkin Fellow, Belkin Scholar, and a member of the *Cardozo Arts and Entertainment Law Journal*. Mr. Kaufman also received an M.B.A. degree in finance from New York University, Leonard N. Stern School of Business, in 1999.

Mr. Kaufman focuses on class actions on behalf of defrauded investors and consumers. Mr. Kaufman's successful securities litigations include *In re Deutsche Telekom AG Securities Litig.*, No. 00-9475 (S.D.N.Y.), a complex international securities litigation requiring evidentiary discovery in both the United States and Europe, which settled for $120 million. Mr. Kaufman was also part of the team that recovered $46 million for investors in *In re Asia Pulp & Paper Securities Litigation*, No. 01-CV-7351 (S.D.N.Y.) and $43.1 million, with contributions of $20 million, $14.85 million and $8.25 million from Motorola, the individual defendants, and defendant underwriters respectively, in *Freeland v. Iridium World Commc'ns, Ltd*.

Mr. Kaufman's outstanding representative results in derivative and transactional litigations include: *In re Trump Hotels Shareholder Derivative Litigation* (Trump personally contributed some of his holdings; the company increased the number of directors on its board, and certain future transactions had to be reviewed by a special committee.)

He recently argued the appeal in *In re Comverse Technology, Inc. Derivative Litig.*, 56 AD3d 49 (2008) which led to the seminal New York Appellate Division opinion which clarified the standards of demand futility, and held that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors; and *In re Topps Company, Inc. Shareholder Litig.* which

resulted in a 2007 decision which vindicated the rights of shareholders under the rules of comity and doctrine of forum non conveniens and to pursue claims in the most relevant forum notwithstanding the fact that jurisdiction might exist as well in the state of incorporation. Mr. Kaufman has also lectured and taught in the subjects of corporate governance and derivative litigation.

Mr. Kaufman is also at the forefront of consumer litigations with a recently-filed litigation brought on behalf of paid e-mail subscribers against web hosting and e-mail service providers in *Golf Clubs Away LLC v. Hostway Corporation, et al.*, Case No. 09-29596 (Fl. Cir. Ct., Broward County).

In addition, Mr. Kaufman represents many of the firm's corporate clients in complex commercial litigation matters and arbitrations, including *Puckett v. Sony Music Entertainment*, No. 108802/98 (New York Cty. 2002) (a complex copyright royalty class action) and an arbitrations on behalf of oppressed minority shareholders in both public and privately held corporations. Prior to joining Milberg in August of 1998, Mr. Kaufman was a Court Attorney for the New York State Supreme Court, New York County (1988-1990) and Principal Law Clerk to Justice Herman Cahn of the Commercial Division of the New York State Supreme Court, New York County (1990-1998).

**CLIFFORD S. GOODSTEIN** earned his A.B. degree from Harvard University in 1988 and his J.D. degree from New York University School of Law in 1993. After graduation, he served as a law clerk to the Honorable Alex T. Howard, Jr., Chief Judge of the United States District Court for the Southern District of Alabama, and then as an associate at Reboul, MacMurray, Hewitt, Maynard & Kristol, and Baker & Botts, prior to joining Milberg in January of 1998.

Mr. Goodstein practices in the areas of consumer fraud, securities, antitrust, and health care litigation. Mr. Goodstein is a member of the bars of New York and New Jersey.

**PETER SAFIRSTEIN** graduated from George Washington University in 1978 with a B.A. degree. He received an M.A. degree in government (concentration in international relations) from Georgetown University in 1980. In 1985, he earned his J.D. degree from Brooklyn Law School, where he was a member of the *Brooklyn Law Review* and

the Moot Court Honors Society. Prior to joining Milberg, Mr. Safirstein was in private practice. In addition, Mr. Safirstein served as a staff attorney in the Enforcement Division for the U.S. Securities and Exchange Commission from 1985-1990. In 1988-89, Mr. Safirstein was designated as a special assistant United States attorney in the Southern District of New York, where he was part of the trial team which prosecuted *United States v. Regan*, (the "Princeton/Newport" case) and *United States v. Lisa Jones*. Mr. Safirstein later served as an assistant United States attorney in the Southern District of Florida.

Mr. Safirstein is a member of the American Bar Association and the Association of the Bar of the City of New York. Mr. Safirstein is a member of the bars of the States of New York and New Jersey and is also admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second and Third Circuits, the District Court of the Southern and Eastern Districts of New York and the District Court of New Jersey.

**PETER E. SEIDMAN** earned his B.A., *cum laude*, from Hobart College in 1979, following which he served as a Peace Corps volunteer living and working among the Guarani, an indigenous tribe in Paraguay. He earned an M.A. degree in journalism in 1982 from the University of Michigan and subsequently worked as a journalist for a variety of publications. In 1994, he earned a J.D. degree, *cum laude*, from the University of Michigan Law School.

Mr. Seidman joined Milberg in 2000. His practice involves the investigation and prosecution of securities litigation on behalf of defrauded investors. Before joining Milberg, he was an associate with the New York law firm of Orans, Elsen & Lupert LLP, where he was active in both civil and white collar criminal litigation in federal and state courts.

Mr. Seidman is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Northern, Southern, and Eastern Districts of New York.

**ANITA KARTALOPOULOS** graduated with a B.A. degree from the University of Toledo, with honors in 1974, majoring in classics, and graduated from Seton Hall Law School in 1982, with an emphasis on health care law. Ms. Kartalopoulos works primarily in the areas of insurance, consumer fraud, securities, and managed care. Before joining Milberg in 1998, she was in government service in the State of New Jersey, holding several positions, including deputy commissioner of insurance for life and health, director of legal regulatory affairs for the Department of Health and Senior Services, and executive director of the New Jersey Real Estate Commission.

As deputy commissioner of insurance she managed the New Jersey Insurance Department's Multi-State Task Force investigating the sales practices of the Prudential Insurance Company. She also served on the Board of Directors of MBL Insurance Company as a rehabilitator and managed litigation pursuant to the company's rehabilitation.

Thereafter as director of legal and regulatory affairs for the Department of Health and Senior Services, Ms. Kartalopoulos was responsible for litigation management, the development of all regulations implementing the New Jersey Healthcare statutes, the development and implementation of a streamlined Certificate of Need (CN) law, and the development of stringent prompt payment regulations to ensure that HMO's meet contractual obligations to physicians and ensure the stability of the health care network for the benefit of consumers.

As executive director of the New Jersey State Real Estate Commission, Ms. Kartalopoulos was responsible for implementing consumer disclosure/protection regulations which had been long opposed by the New Jersey real estate industry. She was also responsible for all disciplinary investigations and hearings against realtors, the inspection and registration of out of state land sales marketed in the State of New Jersey, continuing licensing of 84,000 realtors and brokers and the on-going development of real estate regulations. Ms. Kartalopoulos also worked with New Jersey Attorney General Deborah Poritz in the development of Megan's Law.

Prior to government service, Ms. Kartalopoulos specialized in local government law and land use, representing a number of municipal governments, planning boards, and boards of adjustment. She was responsible for litigation before both state and federal courts, and negotiated significant settlements with the New Jersey Council on

Affordable Housing (COAH) for the benefit of low income residents of the State.

Ms. Kartalopoulos has co-authored the following publications on the subject of securities and shareholder litigation: *Deterring Executive Compensation Excesses: Regulatory Weaknesses, Litigation Strengths* (03/05) and *Vintage Wine In New Bottles: The Curious Evolution of the Concept of Loss Causation* (11/05).

Ms. Kartalopoulos has been a speaker at numerous conferences including The Institutional Investor European Pensions Symposium, The Canadian Hedge Funds Investment Roundtable, The New York Hedge Funds Roundtable, and the AEDBF (Association Europeene de Droit Bancaire et Financier) and speaks regarding the complex legal environment that international and domestic institutional investors face when addressing losses due to securities fraud as well as their proactive and reactive alternatives.

Ms. Kartalopoulos co-chairs the Firm's Outreach and Client Development Committees, and is a member of Milberg's Diversity Committee and Case Development Department.

Ms. Kartalopoulos is admitted to the bar of the State of New Jersey. She is also admitted to appear in the United States District Court for the District of New Jersey and the U.S. Courts of Appeals for the Federal Circuit and the Third Circuit.

**CHRISTOPHER S. POLASZEK** earned his B.S. degree from Florida State University in 1992, *cum laude*, his M.B.A. degree from Florida State University in 1997, his J.D. degree from Florida State University in 1997, *cum laude*, and his LL.M. degree in Securities Regulation from Georgetown University in 2000.

Mr. Polaszek currently specializes in securities fraud litigation. Working together with his colleagues, he has achieved significant success on behalf of shareholders of publicly traded corporations, which has resulted in the recovery of millions of dollars for injured plaintiffs. Mr. Polaszek also regularly meets with institutional investors, including trustees of public and private pension funds, regarding their legal rights.

Prior to joining Milberg, Mr. Polaszek spent several years practicing commercial litigation with an emphasis on securities litigation and arbitration. In this regard, in addition to litigating matters in state and federal courts, he has represented numerous clients in securities arbitration proceedings conducted by the National Association of Securities Dealers, Inc., the New York Stock Exchange, and the American Arbitration Association.

Mr. Polaszek's undergraduate educational background is in finance and accounting. While pursuing his JD/MBA degrees, Mr. Polaszek was awarded a coveted scholarship and internship with the Florida Senate. Then, while completing his LL.M. in Securities Regulation at Georgetown, Mr. Polaszek interned with United States Senator Bob Graham.

Mr. Polaszek is frequently invited to teach continuing legal education courses on a number of topics in the context of complex commercial litigation. In this regard, he has given CLE presentations and lectures on securities fraud class actions; drafting amended complaints in securities fraud class actions; the Sarbanes-Oxley Act; exposures and litigation issues facing participants in the subprime lending market; institutional investor responsibility and advocacy; fraud detection and prevention; and fiduciary responsibilities and obligations of public pension fund trustees. Additionally, Mr. Polaszek has devoted a significant amount of time to local charitable, civic, and community organizations and programs such as Tampa Connection, Junior Achievement, A Gift for Teaching, Bayshore Little League, Children's Dream Fund, SJE Dads' Club, and the FBI Citizens' Academy.

Mr. Polaszek is or has been a member of the Federal Bar Association, Tampa Bay Inn of Court, American Bar Association, Association of Trial Lawyers of America, and the Public Investors Arbitration Bar Association.

**MATTHEW GLUCK** was a litigation partner for over 30 years at Fried, Frank, Harris, Shriver & Jacobson LLP prior to joining Milberg. He frequently represented U.S. and foreign businesses and individuals in major litigation and other complex matters. He has also assisted clients in both formal bankruptcies and out-of-court restructurings of financially troubled companies.

Mr. Gluck twice served as adviser to the court in the restructuring of the Manville Trust in *In re Johns-Manville Corp.*, No. 85-8922 (S.D.N.Y.) and

was the legal representative for future claimants in the Chapter 11 filing of Keene Corporation in *In re Keene Corp.*, No. 93-46090 (Bankr. S.D.N.Y.). He also serves as a local judge in Muttontown, New York. He was one of the lead attorneys for the plaintiffs in the trial against Vivendi which resulted in what may be the largest jury verdict for plaintiffs in a securities class action. He conducted the examination of Vivendi's former CEO, CFO, and their accounting expert.

**NEIL R. FRASER** graduated from the University of Massachusetts, Amherst in 1989 with a B.A. degree in political science. In 1992, he received his J.D. degree from Whittier Law School. While in law school, Mr. Fraser externed for the Hon. Vincent P. Zurzolo, United States Bankruptcy Judge for the Central District of California.

Mr. Fraser focuses his practice in the areas of securities, mass torts, and employment discrimination. He represented the plaintiffs in the recently settled class action alleging employment discrimination at the Jacob K. Javits Convention Center, *Cokely v. NYCCOC* (S.D.N.Y.). In addition, Mr. Fraser is a key part of the team representing more than 330 individuals relating to injuries they sustained by their ingestion of the diet drug combination known as *Fen-Phen* in *In re Diet Drug Litigation Venued in Bergen County*. In securities, he worked on the successfully resolved *In re Racing Champions Securities Litigation* (N.D. Ill.) and is currently a member of the team handling the landmark *In re IPO Securities Litigation*, alleging various forms of market manipulation.

Mr. Fraser is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern District of New York, the Eastern District of New York, and the District of New Jersey.

**SABRINA KIM** graduated from the University of California, Los Angeles, in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in Sociology. She received her J.D. degree from the University of California, Hastings College of Law in 1996.

Ms. Kim has extensive public and private sector experience in various areas of complex commercial litigation, including securities, corporate fiduciary, and consumer cases.

Ms. Kim came to Milberg from the California Department of Justice, where she was a deputy attorney general in the Consumer Law Section for several years. During that time, Ms. Kim served as lead prosecutor in complex state and federal fraud cases, including those against predatory lenders, insurance companies, annuity mills, and other corporate defendants who engaged in large financial fraud schemes.

At Milberg, Ms. Kim has litigated numerous securities fraud and other class actions resulting in substantial recoveries for investors and consumers. Ms. Kim is also one of the principal attorneys responsible for two major California Supreme Court cases involving consumer rights and class action procedure: *Pioneer Electronics (USA) v. Superior Court (Olmstead)*, 40 Cal.4th 360 (Cal. 2007); *Branick v. Downey Savings & Loan Assn*, 39 Cal.4th 235 (Cal. 2006).

Ms. Kim has served as a speaker for programs on class action procedure, tactics and strategies in consumer class actions, substantive changes in unfair and deceptive practices statutes, and trends in complex business litigation. Her speaking engagements include: Consumer Attorneys Association of Los Angeles (CAALA) Convention, *Unfair Business Practices Act, What Is Left?* (September 2007); American Bar Association (ABA) Litigation Section Annual Conference, *Tactics and Strategies for Consumer Cases After Proposition 64 and Class Action Fairness Act* (April 2006); LexisNexis Mealey's Section 17200 Conference, *What is the Future of 17200 Claims in Light of Proposition 64?* (November 2005); Los Angeles County Bar Association (LACBA) 25th Annual Labor and Employment Law Symposium, *Minding Your Own Business (And Professions Code §17200) After Proposition 64* (February 2005).

As an adjunct professor at Loyola Law School, Ms. Kim developed and taught a consumer law course which explored federal and state laws that attempt to strike a balance between businesses' need to effectively market goods and services and consumers' right to accurate information and full disclosure. The course emphasized California's unfair competition and false advertising laws and the Consumer Legal Remedies Act.

Ms. Kim is a board member of the Association of Business Trial Lawyers (ABTL) and a member of the Consumer Attorneys of California (CAOC).

Ms. Kim was named a Southern California Super Lawyer Rising Star in securities litigation by Los Angeles Magazine from 2006 through 2009.

Ms. Kim is admitted to practice in the courts of the State of California, as well as the United States District Court for the Central, Eastern, and Northern Districts of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**ROSS B. BROOKS** earned his B.A. degree from Cornell University in 1992, *cum laude*, and his J.D. degree from the University of Chicago Law School in 1997.

Mr. Brooks focuses his practice on representation of whistleblowers, public and private payors, and injured consumers in litigation involving healthcare fraud and abuse, including False Claims Act, mass torts, class action, and other complex litigation.

Mr. Brooks has led the investigation, litigation, and/or settlement of several of the Firm's Medicare and Medicaid fraud False Claims Act cases. Mr. Brooks served as the Firm's lead attorney in its representation of a union welfare and benefit fund named as part of a class of third-party payors of healthcare costs against Merck & Co. and Schering-Plough Corp. in *In Re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litig*., MDL No. 1938, No. 08-0285 (D.N.J.). The litigation resulted in a settlement of $41.5 million to resolve all claims involving the defendants' co-marketed drugs Vytorin and Zetia. Mr. Brooks is counsel to Nassau County in New York State in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, No. 01-12257 (D. Mass.)

Mr. Brooks is a member of the New York State Bar Association, the New York City Bar Association, Taxpayers Against Fraud, the American Health Lawyers Association, the American Association for Justice, and the Health Law Committee of the New York City Bar Association. Mr. Brooks is also a member of the Firm's Diversity Committee.

Mr. Brooks is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York.

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics' practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.

**KENT A. BRONSON** received a B.A. from State University of New York at Binghamton in 1994. He graduated *cum laude* from University of Pittsburgh School of Law in 1998. During law school, Mr. Bronson was a research editor on the Law Review and a recipient of the Dean's Scholarship.

Mr. Bronson is currently involved in litigating numerous complex class action cases in various state and federal courts, including, among others, *In Re Biovail Corp. Securities Litigation* (in which Milberg LLP served as co-lead counsel on behalf of the Local 282 Welfare Trust Fund, and which was settled for $138 million and certain corporate governance modifications), *In Re Citigroup Pension Plan ERISA Litigation*, *In Re American Express Securities Litigation*, and *In Re Topps Company, Inc. Shareholder Litigation*.

Mr. Bronson is admitted to practice in New York State courts, the United States District Courts for the Southern, Eastern and Northern Districts of New York, and the United States Courts of Appeals for the Second and Tenth Circuits.

**LEIGH SMITH** focuses her practice primarily on class actions on behalf of defrauded investors. She also has significant experience with complex commercial litigation. Her involvement in the *In re Tyco Int'l Ltd. Securities Litigation*, No. 02-1335, helped recover an aggregate settlement of $3.2 billion.

While at Rutgers University, Ms. Smith majored in French and was elected to Phi Beta Kappa and Phi Sigma Iota. As a graduate student, she studied French literature and film and spent a year in France working as an assistant English teacher. Ms. Smith taught French at Rutgers and at the University of Iowa prior to law school. During

law school, Ms. Smith served as the Acquisitions Editor for the *Cornell Journal of Law and Public Policy* and was a member of the Cornell Moot Court Board. She was a finalist in the Cuccia Cup Moot Court Competition and received a CALI Award for Outstanding Achievement for her work in Cornell's Legal Aid Clinic. She also was active in a number of student organizations.

Prior to joining Milberg, Ms. Smith worked at large law firms in New York and New Jersey. She is admitted in the United States District Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey, and the District of Massachusetts.

**ARVIND B. KHURANA** received his B.A. from State University of New York at Albany in 1993, and a J.D. from St. John's University School of Law in 1999, *Dean's List Graduate*. While in law school, Mr. Khurana was on the Dean's List from 1995-1999 and a member of the *American Bankruptcy Institute Law Review*.

Mr. Khurana focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Prior to joining Milberg in August 2005, Mr. Khurana worked as an associate with a major international law firm in New York, concentrating in the area of complex commercial litigation.

Mr. Khurana is a member of the Federal Bar Council and admitted to practice in the state and federal courts of New York. He is also a member of the Firm's Diversity Committee.

**JONATHAN M. LANDERS**, a nationally recognized authority in bankruptcy and insolvency law, is resident in Milberg's New York office and heads the Firm's bankruptcy practice.

Mr. Landers has extensive experience in bankruptcy, insolvency, restructuring, financing transactions, purchase/sale of assets and bankruptcy and insolvency litigation matters, representing debtors, lenders and lending syndicates, large creditors, litigation defendants and asset sellers and purchasers. He is one of only sixty-five members of the prestigious National Bankruptcy Conference, a member of the American College of Bankruptcy (founding class), and has been recognized repeatedly in *The Guide to the World's Leading Insolvency Lawyers* and *The Best Lawyers in America* — most recently in the 2009 edition, and

New York Superlawyers. Mr. Landers was listed in *The Legal 500 US*, 2008 edition as a leading corporate restructuring attorney.

Before joining Milberg LLP, Mr. Landers served as lead counsel for numerous clients, including: debtors The Finova Group, Inc., Hoop (Disney Stores), Odyssey Group (North Face and Head Sportswear), Divi Hotels and S.S. Retail Stores; secured lenders in the cases of Insilco and Concap I, II, IV, and V (involving real estate loans aggregating $500+MM); and represented Merrill Lynch in the Enron and Adelphia bankruptcies; Wells Fargo Bank in the Placid and Penrod bankruptcies; and Dial Corporation in the Greyhound and Bergner bankruptcies; asset purchasers in the U.S. Aggregates, Greate Bay Casinos, Liquor Barn, Sonic Telecommunications, Grand Palais Riverboat and Rivermeadows (Crescent H Ranch) bankruptcies; and was lead counsel for lending groups (including Wells Fargo Bank, Bracton Corporation, successor to Crocker National Bank, and Bank of Montreal) in numerous workout and restructuring transactions; and represented Citibank in connection with the liquidation and bankruptcy of a number of major U.S. law firms, most recently, Heller Ehrman, Thelen, Thacher, and Brobeck.

Mr. Landers graduated from Colgate University (where he was elected to Phi Beta Kappa), and *magna cum laude* from the Harvard Law School (where he was an Editor of the *Harvard Law Review*). Mr. Landers previously was a partner in Gibson, Dunn and Crutcher and has been a Professor of Law at the Universities of Kansas and Illinois, a Visiting Professor of Law at the University of Chicago, a Visiting Scholar at the American Bar Foundation, a Visiting Professor at the University of California Law School (Boalt Hall), and the Distinguished Visiting Professor at the University of San Francisco Law School.

Mr. Landers is the co-author of three books on bankruptcy/creditors' rights and civil procedure, and the author of more than 25 published articles on bankruptcy, creditors' rights and other areas, has testified a number of times before congressional committees, and is a frequent speaker before bar associations and continuing legal education institutes. He is a Contributing Editor of Norton on Bankruptcy, and a member of the Board of Editors of the Norton Bankruptcy Law Advisor.

**KRISTI STAHNKE MCGREGOR** received her B.A. degree in political science, Phi Beta Kappa, from the University of Florida in 1995. She spent two years, 1993-94 and 1995-96, studying political science and economics at the Rheinische Friedrich-Wilhelms-Universitaet Bonn in Bonn, Germany. In 1999, Ms. McGregor received her J.D. degree from Emory University School of Law, where she was the Research Editor of the *Emory International Law Review* and student law clerk to Justice Norman Fletcher of the Georgia Supreme Court.

After graduating from law school, Ms. McGregor was a recipient of the German Chancellor Fellowship through the Alexander Von Humboldt Foundation, which allowed her to attend the Westfaelische Wilhelms-Universitaet Muenster in Muenster, Germany and receive her LL.M. degree *magna cum laude* in German civil law in 2001.

Prior to joining Milberg in 2002, Ms. McGregor practiced in the international section of a large Atlanta law firm. She focuses her practice primarily on class actions on behalf of defrauded investors, as well as complex commercial litigation. She has particular experience in international litigation, primarily involving European companies. She is fluent in German. Ms. McGregor was admitted to the Georgia bar in 1999, the New York bar in 2003, and the Florida bar in 2004.

**ANDREI RADO** focuses his practice on securities, shareholder, and consumer class actions. Mr. Rado's practice places particular emphasis on investigating, together with the Firm's team of investigators and forensic accountants, potential actions for institutional and individual investors injured by corporate wrongdoing.

Mr. Rado's securities practice has included numerous complex litigations nationwide, including *Initial Public Offering Securities Litigation*, which alleges, in hundreds of consolidated cases pending in the Southern District of New York, that investment banks manipulated the initial public offerings of hundreds of companies, and mutual fund timing cases alleging that mutual fund managers allowed select investors to profit by improperly timing their trading in fund shares.

Mr. Rado has also litigated consumer class actions, including a case against jewelry company Zales for improperly denying credit-insurance claims made by unemployed and retired consumers, and a class action against computer maker Gateway for improperly understating in advertising the costs of internet access to consumers, some of whom incurred internet-access fees of hundreds of dollars.

Prior to joining Milberg, Mr. Rado worked as an attorney at a New York City-based investment bank focusing on compliance, with rules and regulations relating to resales of control and restricted securities under the Securities Act of 1933. Mr. Rado also worked at another prominent New York City law firm specializing in plaintiffs' securities class action litigation.

Mr. Rado received his Juris Doctor degree from St. John's University School of Law, cum laude, in 1999, and is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York. Mr. Rado was born in Bucharest Romania.

**ANNA DOVER** received a B.A. degree from Wesleyan University in 1995, and a J.D. degree from the University of California at Davis School of Law in 2001. While in law school, Ms. Dover was a member of the *UC Davis Law Review*.

Ms. Dover focuses her practice on class actions on behalf of defrauded investors and consumers. She currently represents shareholders in actions against various mutual fund families in which Milberg has been appointed lead counsel, including *In re American Mutual Funds Fee Litigation* (C.D. Cal.).

She is admitted to practice in the courts of the States of California and New York.

**CARLA FREDERICKS** graduated *magna cum laude* from the University of Colorado in 1997 and from Columbia Law School in 2001.

Ms. Fredericks focuses her practice on complex litigation. Ms. Fredericks joined Milberg in 2005. She was an integral part of the case team in the *In re Tyco International Ltd. Securities Litigation*, which settled in 2007 for a record $3.2 billion. Ms. Fredericks also represents Indian tribes and organizations in matters to recover losses from fraud and financial misconduct.

Ms. Fredericks serves as an advisor to the American Indian College Fund and is a trustee for the Mashantucket (Western) Pequot Tribe

Endowment Trust. She regularly serves as a moderator or speaker at lectures and seminars on issues pertaining to finance and Indian law. She has performed extensive pro bono and fundraising work in the social justice arena. Ms. Fredericks coordinates the Firm's "In the Community" program and is a member of the Firm's electronic discovery committee and the Firm's Diversity Committee.

Ms. Fredericks graduated from Columbia Law School in 2001. While at Columbia, she was a Public Interest Fellow, a Charles Evans Hughes Scholarship recipient, and treasurer of the Columbia Native American Law Students Association. She is a member of the New York State Bar Association, the Federal Bar Association, the National Native American Bar Association, the National Congress of American Indians, the Indigenous Peoples' Task Force of the Social Investment Forum, the Native American Finance Officers' Association, and is an enrolled member of the Three Affiliated Tribes of North Dakota.

**JEFFREY MESSINGER** received his B.A. from the State University of New York at Stony Brook in 1980, and his J.D., from Boston University School of Law in 1985. Mr. Messinger focuses his practice primarily in the following areas: mass tort litigation, employment discrimination, and False Claims Act litigation. Currently, he represents hundreds of individuals in Vioxx, Bextra, Fen Phen and Medtronic litigation. He has also obtained significant settlements on behalf of victims of employment discrimination.

**PAUL F. NOVAK** joined the Firm to lead its antitrust practice after practicing in both the public and private sectors. Mr. Novak formerly served as the Assistant Attorney General of Michigan in charge of Michigan's Special Litigation Division, which handled antitrust enforcement, securities fraud, and public utility regulation work, and as the City Attorney of Lansing. He also practiced as Senior Attorney in the Lansing office of a regional firm where his practice emphasized antitrust and public utility matters.

While at the Michigan Attorney General's office, Mr. Novak was a national leader in multistate litigation involving pricing practices in the pharmaceuticals industry. He served as lead counsel on behalf of all fifty state attorneys general in the In re Cardizem CD Antitrust Litigation, MDL

No. 1278 (E.D. Mich.). He represented the State of Michigan's Medicaid program and other state purchasing entities in multiple national antitrust and drug pricing cases. He was lead counsel for the State of Michigan in a kidney dialysis monopolization case brought against a major healthcare corporation, and he also represented Michigan in antitrust trials in the computer software industry including the multistate enforcement efforts in New York et al. v. Microsoft and United States et al. v. Oracle Corporation. He has also participated in multiple reviews and negotiations of divestiture proposals in various Clayton Act merger cases.

Mr. Novak is the former Chair of the Michigan Bar Association's Antitrust, Franchising and Trade Regulation Section and is a contributing editor of the American Bar Association's Antitrust and Health Care Newsletter. He is also a member of the State Bar of Michigan United States Court Committee. He was awarded the Frank J. Kelley Excellence in Trial Advocacy Award for his work in antitrust enforcement. He has lectured on antitrust issues in the pharmaceuticals and insurance industries for the Practicing Law Institute. He served as chair of the National Association of Attorneys General Midwest Antitrust Enforcement Task Force, and as a member of the National Association of Attorneys General Airlines Industry Working Group and Prescription Drug Pricing Task Force.

**JAMES M. SHAUGHNESSY** graduated *cum laude* from Adelphi University in 1967 with a B.A. degree in political science and *cum laude* from New York University School of Law in 1969. While at N.Y.U., Mr. Shaughnessy was elected to the Order of the Coif, was the administrative director of the moot court program, and, upon graduation, received the Benjamin F. Butler Award for scholarship and outstanding service to the law school.

Mr. Shaughnessy joined the firm of Casey, Lane & Mittendorf in New York City as a litigation associate in 1969 and became a litigation partner at that firm in 1976. In 1982, Mr. Shaughnessy joined the firm of Haythe & Curley as a litigation partner, and he was the managing partner of the firm for two years. In 1987, Mr. Shaughnessy joined the firm of Windels, Marx, Davies & Ives (now known as Windels, Marx, Lane & Mittendorf, LLP) as a litigation partner. He was the chairman of the

Windels, Marx Litigation Department from 1988 through 1998, and was a member of the firm's Executive Committee from 1990 to 1992. Mr. Shaughnessy joined Milberg in 2001.

Over the course of his career, Mr. Shaughnessy has specialized in commercial, securities, insurance, aviation and bankruptcy litigation. Mr. Shaughnessy was lead defense counsel for Pan American World Airways, Inc. in *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, M.D.L. 799 (E.D.N.Y.), and tried that case on behalf of Pan Am to a jury for three months.

Mr. Shaughnessy is a member of the American Bar Association, the New York State Bar Association, the Association of the Bar of the City of New York, and Federal Bar Council. Mr. Shaughnessy is admitted to practice in New York, California and New Jersey as well as before the United States Supreme Court, the United States Courts of Appeals for the Second, Fifth and Ninth Circuits, the United States District Courts for the Southern, Eastern, Northern and Western Districts of New York, the Southern District of California and the District of New Jersey, and the United States Tax Court.

**JENNIFER L. YOUNG** received a B.A. degree from University of South Carolina in 1996. She graduated *cum laude* from the University of South Carolina School of Law in 2002. During law school, Ms. Young was associate editor in chief of the *South Carolina Law Review*, as well as a member of the South Carolina Moot Court Bar.

Ms. Young specializes in securities fraud and consumer class action litigation. Most recently, she worked on cases arising from misrepresentations in the sales of annuities and violations of the Real Estate Settlement Procedures Act. She is currently a member of the team of attorneys representing victims of the Madoff fraud.

Ms. Young is a member of The Sedona Conference Working Group on Electronic Document Retention and Production, and she is an active member of the New York Inn of Court.

She is admitted to practice in the courts of the States of South Carolina and New York.

**AZRA Z. MEHDI** is a partner in Milberg's Los Angeles office. Ms. Mehdi's practice focuses on securities, consumer, and antitrust litigation. She represents both institutional and individual

investors – in the United States and internationally – in recovering losses resulting from corporate fraud in the U.S. securities markets.

Prior to joining Milberg, Ms. Mehdi was a partner with Coughlin Stoia Geller Rudman Robbins, LLP, where she was the lead litigator on a number of noteworthy recent cases including *Jaffe v. Household International, Inc.*, No. 02-05893 (N.D. Ill.). Ms. Mehdi led the pre-trial phase of the *Jaffe* case, designing the litigation and discovery strategy, and overseeing all motion practice, fact discovery, and expert discovery. In May 2009, a Chicago jury returned a verdict for the plaintiff class against the corporation and the individual executives. Although post-trial proceedings are pending, the investor class could recover between $1 and $3 billion in damages.

Ms. Mehdi also led the consumer action against Bank of America and MBNA Corporation (*Nobles v. MBNA Corp.*, No. 06-03723 (N.D. Cal)) arising from allegations of false representations in defendants' "live check" loan solicitations (i.e., access checks, convenience checks or balance transfer checks). The case resulted in a recovery of over 80% of the compensatory damages and required a change in Bank of America's business practices to provide additional disclosures relating to such solicitations.

Ms. Mehdi was part of a team of lawyers in the WorldCom actions (*In re WorldCom Sec. Litig.*, No. 03-8269 (S.D.N.Y.)), brought on behalf of institutional investors who opted out of the class action case and sued WorldCom's bankers, officers, directors, and auditors for losses related to WorldCom bond offerings. Ms. Mehdi was responsible for motion practice, discovery, and settlement processes for a number of California-based City and County pensions plans, and certain unions and entertainment funds. These actions resulted in a recovery of over $650 million for the institutions.

Ms. Mehdi's antitrust experience includes the following cases: In *re NASDAQ Market-makers Antitrust litigation*, MDL No. 1023 (S.D.N.Y.) (recovery of over $1 billion); *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-5238 (E..D.N.Y.) (recovery of over $ 3 billion); *In re Motorsports Merchandise Antitrust Litigation*, No. 97-2314 (N.D. Ga.), *Ocean View Capital v. Sumitomo Corp.* No. 98-4067 (S.D.N.Y.) (private

action against Sumitomo Copper in connection with price fixing).

Ms. Mehdi was born and raised in Mumbai, India where she completed her secondary certificate before moving to the United States. Ms. Mehdi received her law degree from DePaul University College of Law in Chicago in 1995. Upon graduation, Ms. Mehdi clerked at the Austrian law firm of Ortner, Poch & Foramitti, which represented a private shareholder group bidding to acquire the contract to privatize Austria's telecommunication sector. She obtained an undergraduate degree in 1992 from the University of Illinois at Chicago, with high honors in English and German Literature. She was a member of the Honors College and spent a year at the University of Vienna in Austria.

Ms. Mehdi is admitted to practice in New York (1996), California (2002), before the United States District Court for the Southern and the Eastern Districts of New York (1997), and the United States District Court for the Northern, Central and Southern Districts of California (2002); United States District Court for the Northern District of Illinois (2004).

Ms. Mehdi served on the Lawyer's Committee for Civil Rights from 2006-2009. Ms. Mehdi is fluent in German and Hindi.

### *Of Counsel*

**SOL SCHREIBER** received a B.A. degree, *cum laude*, in 1952 from the City College of New York, and his LL.B. degree from Yale Law School in 1955.

From 1971 through 1978, Mr. Schreiber was a United States Magistrate Judge in the United States District Court for the Southern District of New York, where he conducted more than 1,500 criminal and 3,500 civil pretrial hearings and settled approximately 1,000 civil cases. In addition to trying numerous civil and criminal cases, Mr. Schreiber supervised pretrial practice in derivative, class and complex actions in the admiralty, antitrust, aviation, securities, directors' and officers' and product liability fields, including *Berkey v. Kodak*, *Litton v. ATT*, the *Penn Central Commercial Paper Litigation*, the *New York Times* and *Readers' Digest* gender discrimination, the Argo Merchant-Nantucket stranding, and the Tenerife 747 collision cases.

From November 1978 to January 1982, when he joined Milberg, Mr. Schreiber served as the President and Chief Executive Officer of a unit of the Federation of Jewish Philanthropies of New York which provided centralized legal, risk management and insurance services for the Federation's hospitals; homes for the aged; and health, education and community service agencies. He was Trial Counsel from 1955 through 1971 and Resident Counsel from 1966 through 1971 of the Brooklyn office of Liberty Mutual Insurance Co.

Mr. Schreiber has been a participant in numerous special project committees for the American Bar Association and the Second Circuit. From 1960 to present, Mr. Schreiber has been the Planning and Program Chairman of more than 125 national programs, including the ALI-ABA and PLI's Continuing Professional Education national courses of study on evidence, civil practice and employment discrimination litigation in federal and state courts. Mr. Schreiber developed and chaired the ALI-ABA and Jiao Tong Law School's three-day course of study entitled "Current Civil Litigation in the U.S." in Shanghai, China from June 3-5, 2005. In June 2006, he developed and chaired a three-day course of study on American law in Beijing and Shanghai, China; and in May 2007, coordinated a three-day program in New Delhi, India. He has been a frequent lecturer at professional programs and workshops on federal and state court civil procedure, federal and state court trial evidence and federal criminal practice and procedure. Mr. Schreiber was Reporter, ABA Advocacy Task Force (1970-1971), which led to the formation of the National Institute for Trial Advocacy. He also served as President of the Academy of Court Appointed Special Masters from 2007-2008, and he is presently a member of the

Board of Editors of *Moore's Federal Practice, Third Edition*. In August 2005, he was elected to the Board of Trustees of the Center for American & International Law, formerly the Southwestern Legal Foundation.

From 1972 to 1987, he served as an adjunct professor at Fordham Law School, teaching courses in trial advocacy, product liability, mass torts and insurance disputes. He has been an editor for more than 40 CLE course handbooks and major publications on civil practice and litigation, including ALI-ABA's three-volume *Civil Practice Guide, Litigation in Federal and State Courts* (8th ed. 1998).

Mr. Schreiber served as a Court-Appointed Special Master in the *Marcos Human Rights Litigation*. He was Special Master in the Pan American Lockerbie cases, the *Agent Orange Litigation* (March 1982-January 1984), and a series of other complex federal civil cases.

Mr. Schreiber was Judicial Member, Anglo American Exchange on Civil Procedure (March 1974), and Hearing Officer, N.Y. State Master Energy Plan (fall 1979). He is the recipient of the Francis Rawle Award for outstanding achievements in post-admission legal education (ALI-ABA, July 1985) and the Presidential Award, Legal Aid Society (November 1984). Mr. Schreiber is also the founder and co-chair of the Ovarian Cancer Research Fund, Inc.

Mr. Schreiber is a member of the American Bar Association, the New York State Bar Association, the Association of the Bar of the City of New York and the American Law Institute. He is admitted to the bar of the State of New York, to the United States District Courts for the Southern and Eastern Districts of New York, and to the Second Circuit Court of Appeals.

**JUSTICE HERMAN CAHN** was first elected as Judge of the Civil Court of the City of New York in 1976. He subsequently served as an Acting Justice of the Supreme Court from 1980 until 1992, when he was elected to the Supreme Court. Throughout his decades on the bench, he principally handled civil cases, with the exception of 1981 until 1987, when he presided over criminal matters. Justice Cahn was instrumental in the creation of, and a founding Justice in, the Commercial Division within the New York State Supreme Court. He served as a Justice of the Commercial Division from its inception in 1993 until joining Milberg.

Among his most notable recent cases are the consolidated cases stemming from the Bear Stearns merger with JP Morgan (In re Bear Stearns Litigation); litigation regarding the upcoming America's Cup Yacht Race (Golden Gate Yacht Club v. Societe Nautique De Geneve); litigation stemming from the attempt to enjoin the construction of the new Yankee Stadium (Save Our Parks v. City of New York); and the consolidated state cases regarding the rebuilding of the World Trade Center site (World Trade Center Properties v Alliance Insurance; Port Authority v. Alliance Insurance).

Justice Cahn is a member of the Council on Judicial Administration of the Association of the Bar of the City of New York. He has also recently been appointed to the Character and Fitness Committee of the Appellate Division, First Department. He is on the Register of Mediators for the U.S. Bankruptcy Court, Southern and Eastern Districts of New York.

Before ascending to the bench, Justice Cahn practiced law in Manhattan. He was first admitted to the New York bar in 1956. He is admitted to practice in numerous courts, including the New York State courts, the Southern District of New York and the United States Supreme Court.

Justice Cahn received his law degree from Harvard Law School and a B.A. from City College of the City University of New York.

*Senior Counsel*

**DAVID AZAR** received his B.S. in Finance from Indiana University School of Business in 1991. He graduated from Duke University School of Law, magna cum laude, in 1999. While in law school, he was in the Order of the Coif (top 10% of the class), served as a senior editor of *Law and Contemporary Problems*, and was a member of the Moot Court Board. After law school, he clerked for Chief Justice Veasey of the Delaware Supreme Court.

Mr. Azar focuses his practice on antitrust, corporate governance, securities fraud class actions,

and selected general business litigation matters. Mr. Azar has significant litigation experience, including first-chair trial and appellate work. His experience with corporate governance issues includes spending a year clerking for Chief Justice Veasey of the Delaware Supreme Court.

Mr. Azar's current representative matters include: serving as co-lead counsel in multi-district litigation against Korean Air and Asiana Airlines for allegedly conspiring for more than six years to set prices for passenger airfares between the United States and Korea; serving as co-lead counsel in a class action against Wells Fargo Bank and Bank of New York Mellon for their alleged roles, as trustees, in causing more than $1 billion in losses by investors in Medical Capital Holdings, Inc.; serving as co-lead counsel in a shareholder class action against the board of directors of International Rectifier Corporation for allegedly breaching their fiduciary duties by, among other things, blocking shareholders from accepting a premium tender offer for their shares; and representing a financial institution seeking to recover for breaches of contract and mortgage fraud against various individuals and entities.

Mr. Azar has extensive knowledge of dispute resolution, having served as a mediator in more than 160 cases, and he has trained and reviewed other mediators. He served for five years as the editor of the quarterly publication of the Society of Professionals in Dispute Resolution, and was honored with the association's Presidential Recognition award.

Mr. Azar serves as a volunteer prosecutor through the Los Angeles Bar Association's Trial Advocacy Project, and has been named by *Los Angeles Magazine* as a Southern California Super Lawyers Rising Star. He serves on the pro bono panel of the Harriett Buhai Center for Family Law, and he was awarded a Distinguished Service Award in 2009 for his continuing representation of a disabled father in a complex family law matter. Mr. Azar's pro bono work has also included: prevailing at trial in a case on behalf of a learning disabled student asserting claims under the American with Disabilities Act; successfully persuading the Ninth Circuit Court of Appeals to allow a disabled prisoner's federal civil rights case to proceed, resulting in a published decision on a matter of first impression; and assisting tenants in disputes with their landlords.

Mr. Azar has extensive knowledge of dispute resolution, having served as a mediator in more than 160 cases, and he has trained and reviewed other mediators. He served for five years as the editor of the quarterly publication of the Society of Professionals in Dispute Resolution, and was honored with the association's Presidential Recognition award.

**LOIS F. DIX** graduated from St. John's University summa cum laude in 1992, and in 1994, from St. John's University School of Law where she was executive articles editor of the American Bankruptcy Institute Law Review.

Ms. Dix's practice focuses on bankruptcy and restructuring litigation matters. Prior to joining Milberg LLP, Ms. Dix was the senior career law clerk to the Hon. Elizabeth S. Stong, United States Bankruptcy Court, Eastern District of New York. Prior to her clerkship, Ms. Dix was with Gibson, Dunn & Crutcher, and she was a senior associate with Kaye Scholer LLP. Ms. Dix was one of the senior team members in several high profile bankruptcy matters including The Finova Group, Inc., American Pad & Paper Company, and Medicalogic/Medscape, Inc., and represented Jamesway Corporation, Caldor, Inc, The Power Company of America, Inc. and Integrated Health Services, Inc. in their bankruptcies. Ms. Dix has significant experience in all aspects of bankruptcy practice including confirmation of plans of reorganization, preparation of bankruptcy cases and post-filing administration, bankruptcy sales, and out of court workouts and restructuring transactions. Prior to private practice, Ms. Dix served as law clerk to the Hon. Conrad B. Duberstein, Chief Judge, United States Bankruptcy Court, Eastern District of New York.

Ms. Dix served on the local rules revision committees for the United States Bankruptcy Courts for the Southern and Eastern Districts of New York. She served as a member of the Federal Judicial Center's committee for continuing legal education training of attorneys in the judiciary, and participated in the creation of a nationally shown training film for judicial law clerks.

Ms. Dix is co-author of "Bankruptcy -- New Value Exception," The National Law Journal, June 21, 1999.

Ms. Dix was admitted to the bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1995. She is a member of the American Bar Association, and the American Bankruptcy Institute.

**NICOLE M. DUCKETT** received her B.A. from Georgetown University in 1995, and her J.D., from UCLA School of Law in 1998. Ms. Duckett focuses her practice on securities fraud class actions, consumer class actions, shareholder derivative actions, antitrust litigation, and employment litigation. She joined the firm from Mayer Brown LLP where she practiced complex business litigation, white collar criminal defense and corporate internal investigations. Ms. Duckett has vast trial experience, serving as lead counsel and second-chair counsel in multiple trials as well as a wide-ranging appellate practice including drafting victorious, published appellant briefs and arguing orally before the California Court of Appeal.

Ms. Duckett's representative matters include: Avon Products, Inc. in civil and criminal FCPA investigation by Department of Justice and Securities and Exchange Commission; Broadcom Corporation in civil and criminal options backdating investigation by U.S. Attorneys' Office and Securities and Exchange Commission; Hertz Corporation in multi-plaintiff employment discrimination action seeking several millions of dollars, winning summary judgment and prevailing in the court of appeal; Represented Kaiser Foundation Healthplan in multi-plaintiff ADA action, negotiating very favorable settlement for client; and DaimlerChrysler Corporation in multi-plaintiff employment discrimination action seeking several millions of dollars, negotiating very favorable settlement for the client.

Ms. Duckett is active in the Los Angeles County Bar Association, Beverly Hills Bar Association, UCLA School of Law and California Minority Counsel Program. *Los Angeles Magazine* named Ms. Duckett a Southern California Super Lawyers Rising Star for 2006, 2007, 2008, 2009, and 2010. Ms. Duckett is a member of the Firm's Diversity Committee.

**HENRY KELSTON** received a B.S. degree, *cum laude*, from Tufts University in 1975, and a J.D. degree from New York University School of Law in 1978, where he was a member of the Annual Survey of American Law.

Mr. Kelston has extensive experience in state and federal court litigation, administrative proceedings, and arbitrations. Prior to joining Milberg, he practiced at Proskauer Rose in New York and Siegel, O'Connor & Kainen in Connecticut.

Mr. Kelston is admitted in the courts of the States of New York and Connecticut, as well as the United States District Courts for the Southern District of New York, the Eastern District of New York and the District of Connecticut.

**PEGGY J. WEDGWORTH** received a B.A. degree, in 1982 from Auburn University, and her J.D. degree from University of Alabama Law School in 1986. Ms. Wedgworth was an Assistant District Attorney in Brooklyn, New York from 1986 to 1989. Since leaving the public sector in 1989, she has handled various securities, commodities, and antitrust matters. She has litigated antitrust and commodities class actions on behalf of plaintiffs including extensive experience in all aspects of pre-trial and discovery in, among other cases, *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94-987, 1996 WL 351180 (N.D. Ill. June 24, 1996) (approving $351 million settlement); *In re NASDAQ Market-Makers Antitrust Litigation*, No. 00-1332 (S.D.N.Y.) ($1,027,000,000 settlement); *In re Microsoft Litigation*, No. 00-1332 (D. Md.) (consolidated class actions alleging long term unlawful maintenance of a monopoly and other anticompetitive conduct by Microsoft resulting favorable partial settlements); *In re Soybean Futures Litigation*, No. 89-7009 (N.D. Ill.) ($21,500,000 class settlement providing claiming class members/soybean futures traders a full recovery under plaintiffs' expert's formula); *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act."); *Kohen v. Pacific Investment Management Company*, *LLC*, No. 05-4681 (N.D. Il.) (certified class of treasury bond futures purchasers alleging manipulation of the futures market); *Leider v. Ralfe*, No. 01-3137 (D.N.J.) (alleging price-fixing and monopolization in the diamond market by DeBeers resulting in a settlement of $250,000,000 and extensive injunctive relief), and *In re Natural Gas Commodities Litigation*, 03-6186 (S.D.N.Y.) ($101 million settlement). While a partner at her previous firm, she was involved in numerous antitrust cases including, *Air Cargo Shipping Services Antitrust Litigation*, *In*

*re Digital Music Antitrust Litigation*, *In Re Chocolate Confectionary Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, *In Re Rambus Antitrust Litigation*, and I*n re Flash Memory Antitrust Litigation*. Ms. Wedgworth speaks on topics relating to antitrust litigation, most recently speaking to the New York State Bar, Antitrust Division in January 2008. She also has extensive experience in securities litigation including most recently *In re Initial Public*

*Offering Securities Litigation*, which recently settled for $586 million.

While in law school, Ms. Wedgworth was a member of the Moot Court Board and served as Manager of the National Moot Court Team.

## Special Counsel

**ARTHUR R. MILLER** heads the Firm's appellate practice. He is the nation's leading scholar in the field of civil procedure, a subject about which he has authored or co-authored numerous articles and more than 40 books. These include his treatise, Federal Practice and Procedure, which is relied upon by federal judges throughout the country as the principal authority on federal practice. He also wrote Civil Procedure, the casebook used by most U.S. law schools.

Professor Miller is currently a University Professor at New York University School of Law. This professorship is conferred on outstanding scholars in recognition of the interdisciplinary dimension and breadth of their work. Previously, Professor Miller was the Bruce Bromley Professor of Law at Harvard, where he earned his law degree and taught for 36 years.

In recent years, Professor Miller has actively participated in numerous cases, particularly in federal appellate courts. He has argued in all of the U.S. Courts of Appeal and in the U.S. Supreme Court, most recently in *Tellabs Inc. v. Makor Issues & Rights Ltd.*

Professor Miller is the recipient of numerous awards, including five honorary doctorates, three American Bar Association Gavel Awards and a Special Recognition Gavel Award for promoting public understanding of the law. A renowned commentator on law and society, he won an Emmy award for his work on "The Constitution: That Delicate Balance," an acclaimed PBS series he moderated. Professor Miller also served for two decades as the legal editor for ABC's Good Morning America. In addition, he hosted the weekly television show Miller's Court for eight years and has commented regularly on legal matters for Court TV.

Professor Miller was appointed by two Chief Justices of the U.S. Supreme Court to serve as a member and reporter on the Advisory Committee on Civil Rules of the Judicial Conference of the United States. He has additionally served as reporter and advisor to the American Law Institute, and as a member of various American Bar Association committees, among others. In addition, Professor Miller was appointed by President Ford to serve on the United States Commission on New Technological Uses of Copyrighted Work.

## Associates

**LAUREN BLOCK** received a B.A. degree, *cum laude*, from University of Pennsylvania in 1982, and a J.D. degree from George Washington University Law School in 1985.

Ms. Block focuses her practice on securities class action litigation on behalf of defrauded investors, antitrust litigation, derivative litigation,

and complex commercial litigation. She was admitted to the bars of New York and Pennsylvania in 1986.

**JENNIFER S. CZEISLER** graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95),

she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the CALI excellence for the Future Award, Dean's Certificate of Achievement Award, and membership in the Phi Delta Phi National Honor Society.

Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her *pro bono* work with the American Bar Association Commission on Legal Problems of the Elderly.

**ALASTAIR FINDEIS** received his B.S. degree from the Virginia Military Institute in 1996 and his M.S. from the University of Virginia in 2000. In 2003, he earned his J.D. from Georgetown University.

Mr. Findeis focuses his practice on the representation of whistleblowers, public and private payors, and injured consumers in litigation involving healthcare fraud and abuse, including False Claims Act, mass tort, class action, and other complex litigation. Prior to joining Milberg, he gained extensive experience in pharmaceutical litigation. Mr. Findeis was admitted to the New York State bar in 2004 and is a member of Taxpayers Against Fraud.

**ANNE K. FORNECKER** received her B.A. degree *magna cum laude* from James Madison University. In 2002, she received her J.D. *cum laude* from Brooklyn Law School. While in law school, Ms. Fornecker was a member of the *Brooklyn Law Review*.

Ms. Fornecker focuses her practice on antitrust class action litigation. Prior to joining Milberg, she gained extensive experience in pharmaceutical antitrust class action litigation. She is admitted to the bar of New York and is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York.

**SARA FUKS** graduated from New York University with a B.A. degree in Politics, *summa cum laude*, in 2001. In February 2005, she earned her J.D. degree from Fordham University School of law, *cum laude*. During law school, she was a member of the *Fordham Law Review*.

Ms. Fuks focuses her practice primarily on ERISA litigation and is actively involved in a number of matters including *In re Boston Scientific Corp. ERISA Litigation* (D. Mass.), *In re Morgan Stanley ERISA Litigation* (S.D.N.Y.), and *In re First American Corp. ERISA Litigation* (C.D. Cal.). Ms. Fuks's practice also includes class actions on behalf of defrauded investors and *qui tam* cases.

Prior to joining Milberg in 2006, Ms. Fuks worked at the New York office of Dewey Ballantine LLP, focusing her practice on general commercial litigation.

Ms. Fuks is admitted to practice law in the Eastern and Southern Districts of New York as well as the State Court of New York.

**MICHELLE FURUKAWA** focuses her practice on securities, consumer, and antitrust litigation. While in law school, Ms. Furukawa served as co-editor-in-chief of the *UCLA Asian Pacific American Law Journal*, clerked for the U.S. Securities & Exchange Commission, Division of Enforcement, and was a judicial extern for the Honorable Sheri Bluebond, U.S. Bankruptcy Court, Central District of California. Ms. Furukawa is on the Board of Governors of the Japanese American Bar Association of Greater Los Angeles, and is a member of the Association of Business Trial Lawyers and Consumer Attorneys Association of Los Angeles. She sits on the Firm's Diversity Committee.

**OREN HAKER** received his B.A. degree from Rice University in 1996. In 2003, he received his J.D. from Columbia University School of Law.

Mr. Haker has extensive experience in bankruptcy and restructuring litigation matters, representing debtors, creditors, and investors in distressed situations, as well as purchasers of distressed assets in bankruptcy. Mr. Haker has represented Chapter 11 debtors such as LyondellBasell Industries, St. Vincent Catholic Medical Centers, Northwest Airlines, Adelphia Business Solutions, and Bethlehem Steel. He also served as counsel to Bear Stearns in preparation for a Chapter 11 filing and Lehman Brothers Europe Inc. in its administration proceedings in the United Kingdom. Mr. Haker has represented creditors, such as bank steering and bondholder committees, in financial restructuring and Chapter 11 cases including Truvo, Owens Corning, and Trump

Atlantic City Casinos. He has also represented the Presidential Task Force on the Auto Industry in the Delphi Chapter 11 case.

Prior to joining Milberg, Mr. Haker served as an associate in the restructuring departments at Cadwalader, Wickersham and Taft LLP and Weil, Gotshal & Manges LLP.

While in law school, he was a member of the *Columbia Law Review* and a Harlan Fiske Stone Scholar, and he worked as a judicial intern in the chambers of the Honorable Robert A. Katzmann, United States Court of Appeals for the Second Circuit.

Mr. Haker is admitted to practice in the State of New York and in the United States District Court for the Southern District of New York.

**STEPHANIE HATZAKOS** received a B.A. degree from the University of South Florida in 1995. She earned her J.D., *cum laude*, from Touro Law School in 1997. Ms. Hatzakos focuses her practice primarily on mass torts litigation, representing injured consumers in actions brought against pharmaceutical and medical device manufacturers. Prior to joining Milberg in 2006, Ms. Hatzakos worked as a court attorney at the New York Appellate Division, Second Department and as an associate with law firms in New York, concentrating in the areas of both personal injury and insurance defense.

**TODD KAMMERMAN** received his B.A. degree *cum laude* with honors in Politics from Brandeis University in 1999. In 2002, he received his J.D. degree from the Benjamin N. Cardozo School of Law. While at Cardozo, he was named an Alexander Fellow, through which he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., U.S.D.J. in Newark, New Jersey. Mr. Kammerman is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States District Courts for the District of New Jersey, Southern District of New York, Eastern District of Michigan and the Eastern District of New York and the United States Courts of Appeals for the Third and Eleventh Circuits.

Mr. Kammerman focuses his practice on litigation involving defrauded investors and consumers. Mr. Kammerman's successful litigations include *In re CMS Energy Securities Litigation*, No. 02-72004 (E.D. Mich.) ($200 million recovery); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.) ($90 million recovery); *Scheiner v. i2 Technologies, et al.*, No. 01-418 (N.D. Tex.) ($87.8 million recovery); and *In re Collins & Aikman Corporation Securities Litigation*, No. 03-71173 (E.D. Mich.) ($10.8 million recovery).

Mr. Kammerman played a pivotal role in the *In re Comverse Technology, Inc. Derivative Litigation* ($62 million recovery), particularly in drafting the appellate briefs which led to the seminal New York Appellate Division opinion, reported at 56 A.D.3d 49 (2008), clarifying the standards of demand futility, and holding that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors. He was also a member of the team that litigated the appeal in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* before the United States Supreme Court, in which the Supreme Court issued an opinion defining the pleading standard for scienter in all federal securities fraud cases, and is reported at 551 U.S. 308 (2007).

**JOSHUA KELLER** graduated from the University of North Carolina in 1998 and from Albany Law School of Union University in 2004. Prior to entering law school, Mr. Keller was a Trial Preparation Assistant in the New York County District Attorney's Office. While in law school, Mr. Keller was associate editor of *Albany Law Review* and participated in the Senior Prize Trials competition.

Mr. Keller focuses his practice on securities class action litigation on behalf of defrauded individual and institutional investors. He currently represents classes in several securities fraud and consumer fraud class actions.

Mr. Keller is admitted to practice in the courts of the States of New York and Colorado. He is also admitted to practice in the United States District Court for the Southern District of New York and Northern District of Illinois.

**JULIE KWON** received her B.S. from Cornell University in 2003, and a J.D. from Brooklyn Law School in 2007. During law school, Ms. Kwon fulfilled an externship at MFY Legal Services, Inc., a non-profit legal services provider. Since joining

Milberg LLP, she has helped establish the Firm's community service initiative.

Ms. Kwon focuses her practice primarily on securities class action litigation on behalf of defrauded individual and institutional investors.

She is admitted to the bars of New York and New Jersey, and is admitted to practice in the United States District Court of New Jersey. She is a member of the New York State Bar Association, New York County's Lawyers Association, and Asian American Bar Association of New York.

**JEAN LEE** graduated from New York University with a B.A. degree in Politics and Psychology and a M.S.W. in Social Work. Ms. Lee received her J.D. degree from Rutgers School of Law. Ms. Lee focuses her practice in the area of securities class action and false claims litigation. Prior to joining Milberg, Ms. Lee worked as an associate at a New York law firm concentrating in the area of securities fraud and antitrust litigation. Prior to private practice, Ms. Lee was the law clerk to the Honorable John J. Hughes, United States Magistrate Judge, in the District of New Jersey.

During law school, Ms. Lee was a Senior Editor of the Rutgers Law Record. She is currently the Co-Chair of the Diversity Subcommittee of the Litigation Section of the American Bar Association, the Co-Chair of the Women's Committee of the Asian American Bar Association of New York, and a member of the Asian American Bar Association's Board of Directors. She is also a member of the New York State Bar Association, the International Association of Korean Lawyers, and the Firm's Diversity Committee.

**VICTORIA J. MANIATIS** graduated from Pennsylvania State University in 1990 and from Hofstra University School of Law in 1993. Ms. Maniatis focuses her practice on plaintiffs' mass torts in pharmaceutical and medical device cases and has worked with Plaintiffs' Steering Committees across the country in several litigations, including Avandia, Baycol, Accutane, Ortho Evra, ReNu, and Yaz/Yasmin. She has participated as a moderator and presenter at pharmaceutical meetings and conferences on a variety of subjects. Ms. Maniatis is a participant in the American Association for Justice ("AAJ") Avandia Litigation Group and will moderate that group's continuing Legal Education section at AAJ's annual conference, Summer 2010. While in law school, Ms. Maniatis earned a Hofstra University School of Law Trial Advocacy scholarship, a program that she continues to participate in as an adjunct faculty member teaching trial advocacy. She is currently an active member of the New York State Trial Lawyers Association and AAJ.

**ROLANDO MARQUEZ** received a B.S. degree from Brown University in 1994 and his M.S. degree from New York University in 1998. In 2003 he received his J.D. degree from Fordham Law School.

Mr. Marquez is part of the False Claims Act practice group, representing whistleblowers in actions primarily involving Medicare and Medicaid fraud. He was also part of the Milberg team that served as co-lead plaintiffs' counsel in a securities fraud and accountant liability class action suit that settled for over $3 billion.

Prior to joining Milberg, Mr. Marquez was an associate at a patent boutique firm, where he concentrated on patent litigation matters involving medical device, computer software, and consumer electronic device technologies.

Mr. Marquez is also admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York and the United States Patent and Trademark Office.

**JOHN R. S. MCFARLANE** received a B.Comm. degree from Dalhousie University School of Business Administration in 1996, and an LL.B from Dalhousie Law School in 2002. Mr. McFarlane focuses his practice on class actions on behalf of defrauded investors, as well as actions against various mutual fund families in which Milberg has been appointed lead counsel, including *In re American Express Financial Advisors Securities Litigation* (S.D.N.Y.). Prior to joining Milberg , he practiced securities law at Cassels, Brock & Blackwell LLP in Toronto, Ontario.

Mr. McFarlane was admitted to the Law Society of Upper Canada in 2003 and the New York State bar in 2006.

**ELIZABETH MCKENNA** focuses her practice primarily on antitrust litigation as well as on securities class action litigation on behalf of defrauded individuals and institutional investors. Prior to joining Milberg, Ms. McKenna was an

associate in the New York office of Healy & Baillie, LLP (now part of Blank Rome LLP), where she practiced general commercial litigation. Ms. McKenna graduated from Fordham Law School in 1998. While at Fordham, she was a Stein Scholar in Public Interest Law & Ethics, a member of the *Fordham Environmental Law Journal*, and a Co-Director of the Fordham Student Sponsored Fellowship. Ms. McKenna is admitted to practice in the state courts of New York and in the United States District Courts for the Southern and Eastern Districts of New York.

**ELIZABETH METCALF** attended Colorado College where she received her B.A. in 1992. She received her J.D. degree from Fordham University School of Law in 2008. Ms. Metcalf focuses her practice primarily on securities fraud litigation. Prior to law school, she worked as a financial research analyst at a class action securities fraud law firm. During law school, she was a member of the Fordham International Law Journal, and she served as a legal intern at the Securities Arbitration Clinic of Fordham University School of Law, obtaining a punitive damages award before an arbitration panel under the Financial Industry and Regulatory Authority.

**JOSEPH MUZINGO** concentrates his practice on compliance matters. Prior to joining Milberg, he practiced law in Detroit in the areas of medical malpractice and general litigation.

Mr. Muzingo received an academic scholarship to attend Michigan State Law School, from which he graduated in 2003. While in Law School, Mr. Muzingo served as a member of the Moot Court board for three semesters and was awarded the Moot Court Eve August Award for Best Advocate during his second year of law school.

Mr. Muzingo is admitted to practice law in New York and Michigan.

**CHRISTOPHER ORRICO** received a B.A. in Economics from Yale University in 2005, a J.D. from Villanova School of Law in 2009, and a M.B.A. from the Villanova School of Business in 2009.

Mr. Orrico focuses his practice primarily on securities class action litigation on behalf of defrauded investors.

Prior to law school, Mr. Orrico worked as an account coordinator at a national advertising firm. As an undergraduate, he was captain of the 2005 Yale baseball team.

He is a member of the Connecticut Bar Association, the New York County Lawyers Association, and the American Bar Association.

He is admitted to practice in the courts of the States of Connecticut and New York.

**ROLAND RIGGS** received a B.A. from Trinity College in Hartford, Connecticut in 1999, and a J.D. *cum laude* from Case Western Reserve in 2004. Mr. Riggs' practice focuses on securities litigation and consumer fraud. Among other cases, he currently represents defrauded investors in *In re Merck & Co. Securities Litigation*, and consumers in *The NVIDIA GPU Litigation*. Prior to joining the firm, Mr. Riggs worked at a boutique firm in New York practicing securities litigation. During law school, Mr. Riggs served as a clerk for one summer for the Hon. Alfred V. Covello of the United States District Court for the District of Connecticut. He later worked at McLaughlin & McCaffrey, LLP in Cleveland, OH in the areas of commercial litigation and white collar criminal defense, and did pro bono corporate work representing charities at the Milton A. Kramer Law Clinic. Prior to law school, Mr. Riggs worked in IT and computer programming.

**WILLIAM B. SCOVILLE, JR.** received a B.A. degree from Yale University in 1985 and a J.D. degree with Specialization in International Legal Affairs from Cornell Law School in 1992. As a law student, he participated in Cornell's Legal Aid Clinic, Criminal Justice Clinic, and Prison Project.

Mr. Scoville's practice consists primarily of complex securities and antitrust litigation. As a law student, he participated in Cornell's Legal Aid Clinic, Criminal Justice Clinic, and Prison Project. He is fluent in French, Spanish, and Russian, and in 1997 received a fourth prize at the IBLA Grand Prize International Piano Competition in Sicily. Mr. Scoville was a key member of the trial team that obtained a favorable verdict in *In re Vivendi Universal Securities Litigation* following a four-month jury trial in the Southern District of New York.

**LOUIS A. RUSSO** received his B.A. degree from Villanova University in 2002. After working as a

legal assistant for two years, he attended Hofstra University School of Law, earning his J.D. degree, magna cum laude, in 2007. He served as an editor of the *Hofstra Law Review* and was appointed Vice President of the Hofstra Moot Court Association. Prior to joining Milberg, Mr. Russo was an associate in the Litigation & Dispute Resolution Department at Proskauer Rose LLP, focusing his practice on general commercial litigation.

Mr. Russo focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Mr. Russo is admitted to practice law in the Southern District of New York, the District of New Jersey, the State Courts of New York and New Jersey, and Washington, D.C. He is currently Vice-Chair of the American Bar Association's Tort, Trial & Insurance Practice, Self-Insurers and Risk Managers Committee.

**JESSICA SLEATER** received a B.A. from Truman State University in 2002, and a J.D. from Saint Louis University School of Law in 2007. Ms. Sleater's practice focuses on class action litigation involving defrauded investors and consumers in federal and state courts. Ms. Sleater also has experience in shareholder litigation and has represented the rights of public shareholders of companies, whose management had agreed to a corporate buyout, merger, or other corporate transaction.

Prior to joining the Firm, Ms. Sleater most recently practiced at a boutique firm in New York specializing in securities litigation. She also previously worked for the Metropolitan Transportation Authority-New York City Transit and was an Assistant Attorney General for the State of Missouri. During law school, Ms. Sleater served as a law clerk for the Equal Employment Opportunity Commission, the U.S. Department of Agriculture, and the Missouri Attorney General's Office. Also while in law school, Ms. Sleater was selected as the Editor-in-Chief of the *Saint Louis University Public Law Review*.

Ms. Sleater is admitted to practice in the courts of the States of New York and Missouri, as well as the United States District Courts for the Southern and Eastern Districts of New York.

**CHARLES SLIDDERS** received his L.L.B., from Melbourne University in 1994, with honors, and his L.L.M, from Monash University in 2002. Mr. Slidders is an experienced commercial litigator with almost fifteen years of litigation experience. Prior to joining Milberg in 2008, Mr. Slidders was the principal and founding partner of one of Melbourne, Australia's premier boutique commercial litigation firms. He has frequently appeared in Australia's mainstream media in relation to his legal work.

Mr. Slidders has significant experience in plaintiffs' and class action litigation. He has acted in a variety of matters involving Australia's antitrust (trade practices) laws, corporations law, and general business and property law.

Mr. Slidders has been influential in shaping the law in Australia. He precipitated the retrospective amendment of Victoria's domestic building laws after finding a loophole in the legislation that he successfully litigated before the Supreme Court of Victoria. He also initiated one of Australia's largest multiparty claims alleging breach of fiduciary duties by property developers.

Mr. Slidders' firm was preferred counsel for Victoria's farming community through the Victorian Farmers Federation - the body representing more than 20,000 Victorian farmers. He has acted in agribusiness matters involving trade practices issues against multinational grain trade companies (disputes involving hundreds of millions of dollars of derivative contracts on the CBOT). He has also advised shareholders in a derivative dispute with the management of one of Australia's leading egg wholesalers.

Mr. Slidders is admitted to the bar of New York and is admitted to practice law in Victoria, Australia.

**ANDREW SOKOLOWSKI** focuses his practice on consumer class actions, securities class actions, and shareholder derivative lawsuits. Among other cases, Mr. Sokolowski represents consumers prosecuting claims against banks accused of unfair lending and credit practices. Before joining Milberg, Mr. Sokolowski worked for law firms litigating various complex business disputes and real estate matters.

Mr. Sokolowski received his B.A. in History from the University of California, Los Angeles, and his J.D. from Loyola Law School, where he finished in the top 5% of his class and served as an Articles Editor for the *Loyola of Los Angeles Law*

*Review*. Between college and law school, Mr. Sokolowski served in the United States Army as an infantryman, and was stationed at Fort Lewis, Washington.

Mr. Sokolowski is a member of the Board of Governors (2009 – present) for the Association of Business Trial Lawyers' Los Angeles chapter, and he serves as co-editor of the chapter's *ABTL Report*. Mr. Sokolowski is also a member of the Consumer Attorneys Association of Los Angeles and the Los Angeles County Bar Association.

Mr. Sokolowski is admitted to practice in the courts of the State of California, as well as all United States District Courts in California and the United States Court of Appeals for the Ninth Circuit.

**JENNIFER J. SOSA** graduated from Northeastern University with a B.S. degree in Chemical Engineering, *cum laude*, in 2002. In 2005, she earned her J.D. degree from Temple University Beasley School of Law. During law school, she was a member of the Environmental Moot Court Team and was awarded the David Sive Award for Best Brief overall in the 2004 Pace National Environmental Law Moot Court Competition.

Ms. Sosa focuses her practice on ERISA litigation and is actively involved in a number of matters including *In re Boston ScientificCorp. ERISA Litigation* (D. Mass.), *In re Morgan Stanley ERISA Litigation* (S.D.N.Y.), and *In re First American Corp. ERISA Litigation* (C.D. Cal.). Ms. Sosa has also concentrated part of her practice on class actions against defrauded stockholders in cases such as *South Ferry LP # 2 v. Killinger, et al.* (W.D. Wash.), as well as the investigation and prosecution of antitrust and consumer protection actions.

Ms. Sosa is admitted to practice law in the Eastern and Southern Districts of New York and the District of New Jersey, as well as New York and New Jersey state courts. Prior to law school, Ms. Sosa worked as a Chemical Engineer.

**GARY SNITOW** received his B.S. degree *magna cum laude* in Accounting from Yeshiva University's Sy Syms School of Business in 2002. In 2005, he received his J.D. degree from the Fordham University School of Law. Prior to joining Milberg, Mr. Snitow served as an Assistant District Attorney in the New York County District Attorney's Office. While at the District Attorney's Office, Mr. Snitow was initially assigned to the Appeals Bureau where he prepared appellate briefs and represented the District Attorney at oral arguments before the Appellate Division, First Department and the New York State Court of Appeals. Mr. Snitow was then assigned to the Special Prosecutions Bureau where he investigated and prosecuted a variety of white collar crimes.

Mr. Snitow is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

**ANNE MARIE VU** received her B.A. degree in Political Science and French from the University of Portland in 2000. She spent an academic year studying at the Université de Paris-IV (La Sorbonne) in Paris, France. Ms. Vu earned her J.D. degree from the Benjamin N. Cardozo School of Law in 2003.

Ms. Vu's practice is focused on securities, consumer and class action litigation in federal and state courts. She assisted in prosecuting the claims of an international class of plaintiffs in *In re Vivendi Universal, S.A. Securities Litigation*. Ms. Vu also has experience in shareholder litigation and has represented the rights of public shareholders of companies whose management had agreed to a corporate buyout, merger or other corporate transaction. Among the cases in which Ms. Vu and her colleagues have successfully represented shareholders in corporate takeover litigation are: *In re Topps Company, Inc. Shareholder Litigation*, *In re Applebee's Shareholder Litigation*, and *In re Republic Services Shareholder Litigation*.

During law school, Ms. Vu clerked for a judge at the New York State Supreme Court, served as a legal intern at the Federal Trade Commission, and was a member of the Willem C. Vis International Moot Competition, which competes annually in Vienna, Austria.

Ms. Vu is admitted to practice in the courts of the States of New York and California, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Central District of California, the District of Colorado, the United States District Court for the District of

Colorado and the United States Court of Appeals for the Tenth Circuit. She is fluent in Vietnamese and French and is a member of the Firm's Diversity Committee.

# EXHIBIT 3



# HARWOOD FEFFER LLP

## FIRM DESCRIPTION

The law firm of Harwood Feffer LLP ("Harwood Feffer" or the "Firm") specializes in complex, multi-party litigation with an emphasis on securities class actions, shareholder derivative and ERISA litigation. The Firm also handles more general complex commercial litigation involving allegations of breach of contract, breach of fiduciary duty, fraud, and negligence, as well as litigation involving consumer fraud, anti-competitive conduct, and other commercial claims. In addition, the Firm prosecutes actions on behalf of workers in actions stemming from violations of federal and state labor laws.

Harwood Feffer is dedicated to prosecuting socially useful actions in the most efficient manner and with the highest level of professional competence. The structure of the Firm allows us a far greater degree of independence, flexibility, and satisfaction than a large firm environment, without sacrificing the quality of representation necessary to successfully litigate complex actions throughout the country. The Firm maintains an excellent reputation among both the plaintiffs' and defense bars. Our adversaries and co-counsel know that we take a case to trial, if necessary, to achieve a satisfactory result for our clients.

Harwood Feffer has been acknowledged by courts and by its peers to be one of the leaders in the plaintiffs' shareholder advocacy bar. In this regard, we have developed new law in the areas of tender offers, fiduciary duty of corporate insiders to public shareholders in mergers and takeovers, and general principles of required disclosure to shareholders and institutional investors in public companies.



Harwood Feffer LLP
Page 2

As a result, the Firm has been designated as lead, co-lead or special counsel in numerous complex cases and other actions involving shareholder rights and corporate governance. In the vast majority of such actions, the Firm's skill and expertise has led to the recovery of substantial monetary and equitable benefits for investors, stockholders, corporations, and partnerships. By way of example, the following litigated actions, in which the Firm served in a leadership capacity, were all brought to highly successful conclusions: 1) In re First Capital Holdings Corporation Financial Products Securities Litigation, MDL 901 (C.D.Cal.) (restoration of over $1 billion in insurance policies and benefits); 2) In re Royal Dutch/Shell Transport ERISA Litigation, (D.N.J.) (creation of settlement fund of $90 million plus implementation of structural relief); 3) In re Prudential Bache Energy Income Partnerships Securities Litigation, MDL 880 (E.D.La.) (creation of settlement fund in excess of $90 million); 4) In re JWP Inc. Securities Litigation, (S.D.N.Y.) (creation of settlement fund in excess of $37 million); 5) Morse v. McWhorter, (M.D. Tenn.)(creation of a settlement fund of $49.5 million on behalf of investors in Columbia/HCA Healthcare Corp.); 6) In re BankOne Securities Litigation, (N.D. Ill.) (creation of a $45 million settlement fund); and 7) Sidney Morse, et al. v. Abbott Laboratories, et al., (N.D. Ill.) (creation of a $14.1 million settlement fund following a jury verdict for plaintiffs).

The Firm has also been appointed Co-Lead Counsel in a Multidistrict Litigation against FedEx Ground Package System, Inc. currently pending in the Northern District of Indiana, Docket No. MD- 1700, involving actions prosecuting claims on behalf of over 40 separate state and federal classes from over 35 states. This litigation concerns FedEx Ground's practice of misclassifying its driver employees as independent contractors.



Harwood Feffer LLP
Page 3

Courts have often recognized the Firm's skill in class, derivative, and ERISA actions.  For example, in <u>In re Electro-Catheter Securities Litigation</u>, Judge Nicholas Politan of the District of New Jersey stated:

> [C]ounsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation that I participated in, which was perhaps the major part of the Court litigation here, always well prepared, well spoken, and knew their stuff and they are a credit to their profession.  They are the top of the line.

In <u>J. Michael v. SFBC International, Inc.</u>, Judge Stanley R. Chesler of the District of New Jersey stated:

> The Court . . . is delighted, quite frankly, to see the practicality of counsel on both sides in this matter and that, indeed, settlement in this case and at this early stage ends up with very substantial and practical benefits to all the parties in this case and ultimately to the corporation.

## THE ATTORNEYS OF THE FIRM

**Robert I. Harwood**, senior partner of the Firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange.  He has prosecuted numerous securities, class, derivative, and ERISA actions.  He has served as Acting Village Justice in Dobbs Ferry, New York since 1999. He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute.  In a statewide survey of his legal peers published by Super Lawyers Magazine, a special publication of THE NEW



Harwood Feffer LLP
Page 4

YORK TIMES MAGAZINE, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer" in 2006, 2007, 2008 and 2009. Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research. He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City.

Commenting on Mr. Harwood's abilities, in In re Royal Dutch/Shell Transport ERISA Litigation, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind. Moreover, in this case it showed. Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery . . . . So both skill and efficiency were brought to the table here by counsel, no doubt about that.

Likewise, Judge Hurley stated in connection with In re Olsten Corporation Securities Litigation, 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created: "The quality of representation here I think has been excellent." Mr. Harwood was lead attorney in Meritt v. Eckerd, 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars." Mr. Harwood prosecuted the Hoeniger v. Aylsworth class action litigation in the United States District Court for the Western District of Texas (SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of The Wall Street Journal ("Prospector Fund Finds Golden Touch in Class Action Suit" p. 18, col. 1). Mr. Harwood served as co-lead counsel in In Re Interco Incorporated



Harwood Feffer LLP
Page 5

_Shareholders Litigation_, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought. There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in _Morse v. McWhorter_, (Columbia/HCA Healthcare Securities Litigation) (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as _In re Bank One Securities Litigation_, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund. Mr. Harwood also served as co-lead counsel in _In re Safety-Kleen Corp. Stockholders Litigation_, (D.S.C.), which resulted in a settlement fund of $44.5 million; _In re Laidlaw Stockholders Litigation_, (D.S.C.), which resulted in a settlement fund of $24 million; _In re AIG ERISA_ Litigation, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million; _In re JWP Inc. Securities Litigation_, (S.D.N.Y.), which resulted in a $37 million settlement fund; _In re Oxford Health Plans, Inc. Derivative Litigation_, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and _In re UNUMProvident Corp. Securities Litigation_, (D. Me.), which resulted in the creation of settlement fund of $45 million.

**Joel C. Feffer**, one of the senior members of the firm, was the partner supervising the litigation of _In re Home Shopping Network, Inc., Derivative Litigation_, (S.D. Fla.), which created a settlement benefit in excess of $20 million, and _Edge Partners, L.P. v. Dockser, et al._, (D. Md.), which created a settlement benefit in excess of $11 million. In addition, Mr. Feffer was in charge of _Dornberger v. Metropolitan Life Insurance Company_ in the Southern District of New



Harwood Feffer LLP
Page 6

York, which created a settlement benefit of more than $20 million; the successful prosecution of the Regeneron Pharmaceuticals, Inc. Securities Litigation in the Southern District of New York, which created a settlement fund in excess of $4 million; and Croyden Assoc. v. Tesoro Petroleum Corp., et al., (Del. Ch.), which created a settlement benefit of $19.2 million on behalf of holders of preferred stock of Tesoro Petroleum Corp.; and In re Alliance Pharmaceutical Corp. Securities Litigation, (S.D.N.Y.), which on the eve of trial created a settlement of $4.75 million.

Mr. Feffer graduated from Georgetown University Law Center in 1967 and specialized in corporate law and securities litigation. Mr. Feffer is a member of both the New York State and American Bar Associations.

**Daniella Quitt**, a member of the Firm, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Fifth and Ninth Circuits.

Ms. Quitt has played a significant role in numerous actions in which Harwood Feffer served as lead or co-lead counsel, wherein substantial benefits were conferred upon plaintiff shareholders, such as In re Safety-Kleen Corp. Stockholders Litigation, (D.S.C.) (settlement fund of $44.5 million); In re Laidlaw Stockholders Litigation, (D.S.C.) (settlement fund of $24 million); In re UNUMProvident Corp. Securities Litigation, (D. Me.) (settlement fund of $45 million); In re Harnischfeger Industries (E.D. Wisc.) (settlement fund of $10.1 million); In re Oxford Health Plans, Inc. Derivative Litigation, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); In re JWP Inc. Securities Litigation, (S.D.N.Y.) (settlement fund of $37 million); In re Home Shopping



Harwood Feffer LLP
Page 7

Network, Inc., Derivative Litigation, (S.D. Fla.) (settlement benefit in excess of $20 million); In re Rexel Shareholder Litigation, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and Croyden Assoc. v. Tesoro Petroleum Corp., et al., (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of Alessi v. Beracha, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt.  You did a good job and got a good result, and you should be proud of it."

Prior to joining Harwood Feffer in May 1991, Ms. Quitt represented both plaintiffs and defendants in complex commercial litigation.  Since her affiliation with Harwood Feffer, Ms. Quitt has focused her practice on shareholder rights but continues to handle general commercial and consumer litigation.

**Matthew M. Houston**, a member of the Firm, graduated from Boston University School of Law in 1988.  Mr. Houston is a member of the Bar of the State of New York and the Commonwealth of Massachusetts.  Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts.  Since his affiliation with Harwood Feffer in 1992, Mr. Houston has concentrated his practice exclusively in the field of shareholder rights and ERISA class actions.

Mr. Houston has played a principal role in numerous class actions wherein substantial benefits were conferred upon plaintiffs:  Pace American Shareholder Litigation, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); In re Bay Financial Securities Litigation, Master File No. 89-2377-DPW, (J. Woodlock) (D. Mass.) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); Crandon Capital Partners v. Sanford M. Kimmel, C.A. No. 14998 (J. Chandler) (Del. Ch. 1996)



Harwood Feffer LLP
Page 8

(settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger); Goldsmith v. Technology Solutions Company, 92 C 4374 (J. Manning) (N.D. Ill. 1992) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

**Samuel K. Rosen**, a member of the Firm, graduated Princeton University in 1965 and cum laude from Harvard Law School in 1968. Mr. Rosen has had extensive experience in securities class action litigation, as well as complex corporate and commercial litigation. Mr. Rosen has also represented public and private companies in matters of general corporate concern.

In 1979, Mr. Rosen argued in the United States Supreme Court, and won, the landmark case, Park Lane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979). Mr. Rosen played a key role in the successful prosecution of Morse v. McWhorter, (M.D. Tenn.) (creation of a settlement fund of $49.5 million on behalf of investors in Columbia/HCA Healthcare Corp.) and In re Olsten Corporation Securities Litigation, (E.D.N.Y.) (creation of a settlement fund of $24.1 million).

**James G. Flynn**, a member of the Firm, graduated cum laude from Fordham College in 1980 and cum laude from St. John's School of Law in 1988. Mr. Flynn is a member of the Bar of the State of New York and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and to the United States Court of Appeals for the Second and the Fifth Circuits.

Mr. Flynn has played a principal role in numerous class, derivative, and consumer actions wherein substantial benefits were conferred upon investors and consumers, such as In re Executive Telecard, Ltd. Securities Litigation, 94 Civ. 7846 (CLB) (S.D.N.Y.) (settlement benefit in cash and options of over $4 million in



Harwood Feffer LLP
Page 9

Federal securities action); <u>In re Verizon Three Way Calling Litigation</u>, No. 603484-01 (Sup. Ct. N.Y. County) (class action settlement providing full refund of improper three way calling charges of up to $2 million collected); <u>In re Graham-Field Health Products, Inc. Securities Litigation</u>, No. 98-CV-1923 (DRH) (E.D.N.Y.) ($5,650,000 settlement of Federal securities class action); and <u>Geer v. Cox, et al.</u>, Case No. 01-2583-JAR (D. Kan.) (derivative settlement of $2.5 million in class and derivative action).

Prior to joining Harwood Feffer, Mr. Flynn represented both plaintiffs and defendants in commercial and securities litigations and in class actions. Since his affiliation with Harwood Feffer in 1994, Mr. Flynn has focused his practice in the field of shareholder and consumer rights but continues to handle general and complex commercial litigation as well.

**Jeffrey M. Norton**, a member of the Firm, graduated with honors from Arizona State University in 1992 and cum laude from Pace University School of Law in 1997 where he received a Dean's Grant as well as a Public Interest Law Scholarship for his work with the Center for Constitutional Rights in New York City and Pace University's Social Justice Center. Mr. Norton concentrates his practice in the areas of shareholder rights, ERISA litigation, consumer fraud, products liability and civil rights. He has argued matters before numerous state and federal courts and played a key role in numerous actions where substantial benefits were conferred upon plaintiffs and class members, including <u>In re Royal Dutch/Shell Transport ERISA Litigation</u>, (D.N.J.) ($90 million settlement); <u>In re AIG ERISA Litig.</u>, 04-CV-9387 (S.D.N.Y.)($24.5 million settlement ); <u>In re Conagra Foods, Inc. ERISA Litig.</u>, 8:05-CV-00348 (D. Neb.)(settlement valued over $14 million); <u>Salvato v. Zale Corp. et al.</u>, 3:06-CV-1124-D (N.D. Tx.) (settlement valued over $7 million);



Harwood Feffer LLP
Page 10

and <u>Graden v. Conexant Systems, Inc.</u>, 2:05-CV-00695 (D.N.J.) (settlement valued at over $12 million).

In the <u>Conexant</u> case, Mr. Norton argued and won an appeal before the U.S. Court of Appeals for the Third Circuit setting precedent that established statutory standing under ERISA for millions of otherwise disqualified former employees. <u>See Graden v. Conexant Systems, Inc.</u>, 496 F.3d 496 (3d cir. 2007), <u>cert.</u> <u>denied</u> 128 S.Ct. 1473 (2008)). Mr. Norton subsequently argued and won a similar result before the Eleventh Circuit in <u>Lanfear v. Home Depot, Inc.</u>, 536 F.3d 1217 (11th Cir. 2008). Mr. Norton was involved in the <u>In re: New York ReNu with Moistureloc Product Liability Litigation</u>, 766,000/2007 (NY Sup. Ct), and most recently was appointed to the Plaintiffs' Steering Committee in <u>In re: Zicam Cold Remedy Marketing, Sales Practices And Products Liability Litigation</u>, 2:09-md-02096 (FJM), pending in the U.S. District Court for the District of Arizona.

In addition to representing both plaintiffs and defendants in a wide range of commercial and civil litigation matters, Mr. Norton drafted the supplement to Paul D. Rheingold, MASS TORT LITIGATION (1996) and played a critical role in the seminal voting rights case of <u>Goosby v. Town Board of the Town of Hempstead</u>, 981 F. Supp. 751 (E.D.N.Y. 1997), <u>aff</u>, 180 F.3d 476 (2d. Cir. 1999), <u>cert. denied</u>, 528 U.S. 1138 (2000). Mr. Norton's efforts have been the subject of various television and newspapers pieces and he has been a panelist for CLE seminars, including ALI-ABA's Lender Misconduct in Consumer Foreclosures and Bankruptcy. Mr. Norton is admitted in the State Courts of New York and Connecticut as well as the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Michigan, the Northern District of Ohio, the United States Courts of Appeals for the Second, Third, Fourth, and Eleventh Circuits, and the United States Supreme Court.



Harwood Feffer LLP
Page 11

**Peter W. Overs, Jr.**, Counsel to the Firm, was admitted to the New York Bar in 1994 and the U.S. District Court, Southern and Eastern Districts of New York in 1995.  He is a graduate of St. Johns University (J.D., 1993) and  New York University (B.A., *magna cum laude*, Departmental Honors in Philosophy, 1990).  Mr. Overs authored "<u>U.S. v. Fagg</u>: Stretching the Bounds of Privacy," 66 St. Johns L. Rev. 1193 (1993).  He is a member of the Association of the Bar, City of New York. Upon graduation from law school, Mr. Overs served as law clerk to the Honorable Paul J. Kelly, Jr., Circuit Judge, Unites States Court of Appeals for the Tenth Judicial Circuit.  Prior to becoming an associate of the Firm, Mr. Overs represented both plaintiffs and defendants in antitrust and securities class actions, complex commercial litigation and federal appeals.  Mr. Overs concentrates his practice on antitrust, labor law, consumer and ERISA class actions.

**Tanya Korkhov**, an associate of the Firm, was admitted to the bar in 2006. Ms. Korkhov graduated from New York University with a Bachelor of Arts in English and American Literature. She received her J.D. from the Benjamin N. Cardozo School of Law in 2005, where as a member of the Securities Arbitration Clinic, she represented clients in securities-related matters.   Ms. Korkhov represented Cardozo on a four-member team in the 2005 and 2004 annual Willem C. Vis International Commercial Arbitration Moot Competition held in Vienna, Austria. Ms. Korkhov is admitted to the United States District Courts for the Southern and Eastern Districts of New York.

**Roy Shimon**, an associate of the Firm, was admitted to the Bar of the State of New York in 2007. Prior to becoming an associate of the Firm, Mr. Shimon served as judicial intern to New York Supreme Court Justice Ronald D. Hollie, and



Harwood Feffer LLP
Page 12

to New York State Supreme Court Justice/Associate Justice Appellate Term Jaime A. Rios.

Mr. Shimon graduated with honors from Franklin & Marshall College in 2003, where he was also inducted into the Pi Sigma Alpha and Alpha Kappa Delta National Honor Societies. He received his J.D. from St. John's University in 2006, where he served on the Board of the Moot Court Honor Society, and as Vice President of the Entertainment & Sports Law Society. Mr. Shimon is admitted to the United States District Courts for the Southern and Eastern Districts of New York.

**Professor Randolph M. McLaughlin**, a graduate of Columbia College and Harvard Law School, joined the Firm as *Of Counsel* in 2008. Professor McLaughlin is currently on the faculty at Pace University School of Law where he teaches courses focusing on civil rights law, litigation, labor law, voting rights, and civil procedure. Prior to joining Pace's law faculty in 1988, Professor McLaughlin was an attorney associated with Meyer, Suozzi, English & Klein, where he specialized in civil litigation and labor law. In 1978, he began his legal career at the Center for Constitutional Rights, a civil rights/civil liberties legal organization in New York City. For eight years he worked side by side with the renowned civil rights attorney William Kunstler. While there he was responsible for the management and coordination of important civil rights/civil liberties cases at the trial and appellate levels, and he pioneered the development of a legal strategy to redress incidents of racially–motivated violence. In 1982, he won an award of $535,000 for five black women who had been attacked by members of the Chattanooga Ku Klux Klan.

On February 20, 1997, Professor McLaughlin won a landmark victory in a voting rights case against the Town of Hempstead, N.Y., entitled <u>Goosby v. Town Board of the Town of Hempstead</u>**,** 981 F. Supp. 751 (E.D.N.Y. 1997), <u>aff</u>, 180 F.3d 476 (2d. Cir. 1999), <u>cert. denied,</u> 528 U.S. 1138 (2000). A federal judge ruled that



Harwood Feffer LLP
Page 13

the town-wide method of electing the Town Council was discriminatory and ordered that the system be dismantled.

In 1997, Professor McLaughlin agreed to represent the family of Charles Campbell who had been killed during a dispute over a parking space in Dobbs Ferry, N.Y. The shooter, an off-duty New York City police officer, was subsequently convicted of second-degree murder and sentenced to a prison term of twenty years to life. Professor McLaughlin filed suit against the shooter and his alleged accomplices. A federal jury awarded the plaintiff $5 million dollars in compensatory damages.

In 2007, he intervened on behalf of an Hispanic political activist in a voting rights lawsuit brought by the United States Department of Justice against the Village of Port Chester. On January 17, 2008, the district court issued an opinion and found that the Village's at-large election system violated the Voting Rights Act of 1965.

# EXHIBIT 4



*A Professional Corporation*

**HOUSTON**

The Lanier Law Firm, PC
6810 FM 1960 West
Houston, TX 77069
Post Office Box 691448
Houston, TX 77269
(713) 659-5200
Fax (713) 659-2204

**LOS ANGELES**

The Lanier Law Firm, PC
2049 Century Park East
Suite 1940
Los Angeles, CA 90067
(310) 277-5100
Fax (310) 277-5103

**NEW YORK**

The Lanier Law Firm, PLLC
Tower 56
126 East 56th Street
6th Floor
New York, NY 10022
(212) 421-2800
Fax (212) 421-2878

**PALO ALTO**

The Lanier Law Firm, PC
2200 Geng Rd., Suite 200
Palo Alto, CA 94303
(650) 322-9100
Fax (650) 322-9103

## The Lanier Law Firm

For nearly twenty (20) years, The Lanier Law Firm (hereinafter "LLF") has provided sound legal representation to thousands of individuals, families and businesses in matters concerning serious personal injuries and complex commercial disputes.

**a.     Overview of The Lanier Law Firm:**

Founded in 1990 by W. Mark Lanier, LLF began as a two-attorney firm in Houston, TX.   Today, LLF is composed of more than fifty (50) attorneys, with offices located in Houston, TX, New York, NY, Los Angeles, CA, and Palo Alto, CA.  LLF is also preparing to open an office in London, England in late 2010 to manage its recently established International Arbitration and Dispute Group.  Mr. Lanier's primary goal is to provide the highest quality legal care, in an honest and professional manner.  That goal is shared throughout the entire LLF organization, and has been the key to the firm's continued success.

Indeed, the reputation that LLF has earned recently enabled LLF to recruit and hire Jack White, Esq. Mr. White is the only United States Supreme Court Law Clerk to accept employment with a plaintiffs' trial firm upon the conclusion of clerkship.  If appointed to the leadership in this litigation, LLF anticipates that Mr. White, who most recently served as a Law Clerk for Justice Samuel A. Alito, Jr., will beneficially impact the litigation by adding his superb legal intellect to the briefings that will be filed before this Court.  In short, as further reflected throughout the remainder of this firm biography, LLF spares no expense when it comes to hiring and staffing our cases with the legal talent required to provide our clients, our co-litigants, and the Courts, with top-notch work product.  Our work product and successful track record reflect that philosophy.

**b.     W. Mark Lanier**

Mr. Lanier is licensed to practice law in the State of Texas, the State of New York, and the United States Supreme Court.  Mr. Lanier is also certified as a personal injury trial specialist by the Texas Board of Legal Specialization.  Throughout his career, Mr. Lanier has been recognized as one of the best trial attorneys in the country.  On June 28, 2010, Texas Lawyer named Mr. Lanier one of the "25 Greatest Texas Lawyers of the Past Quarter-Century."  On March 29, 2010, he was named by the National Law Journal as one of "The Decade's Most Influential Lawyers."  This recognition was significant because Mr. Lanier was one of only four litigators graced with this honor, and the only plaintiffs' trial attorney selected for this award. In 2006, The National Law Journal honored Mr. Lanier as one of the Nation's Top 10 Trial Attorneys and one of the 100 Most Influential Lawyers in America.  In 2005, he was named one of the Nation's top 40 attorneys under the age of 40, and in 1998, he was named one of Nation's Top 10 Trial Attorneys.  In addition to such national recognition, Mr. Lanier's work has been recognized by his peers in Texas.  In a statewide attorney survey published in Texas Monthly magazine, Mr. Lanier earned selection to the "Texas Super Lawyers" list in 2003, 2004, 2005, 2006, 2007, 2008 and 2009.  In 2002, The Texas Lawyer newspaper listed Mr. Lanier as one of the Top 5 "Go To" Personal Injury Plaintiff Attorneys in Texas.  The same publication named Mr. Lanier as its 2005 "Impact Player of the Year" and later recognized him as the Top Personal Injury Lawyer in Texas in 2007.  In 2003, Mr. Lanier was named by *The American Lawyer* magazine as one of the top 45 attorneys in the nation under the age of 45; in 2005, *Texas Lawyer* named Mr. Lanier its 2005 "Impact Player

of the Year". In 2007, *Texas Lawyer* newspaper named Mr. Lanier as the top personal injury lawyer in the State of Texas; was selected as a "Texas Super Lawyer" in 2003, 2004, 2005, 2006, 2007, 2008 and 2009; and named one of "*The Best Lawyers in America*" in 2006, 2007, 2008, 2009 and 2010 editions.

**c.      LLF's Attorneys Are Actively Engaged In Diverse Trial Practices**

In addition to Mr. Lanier, LLF is composed of outstanding attorneys who collectively present decades of trial and appellate experience in the following practice areas:

- · Pharmaceutical Liability (LLF's NY office);
- · Commercial Litigation (LLF's NY, TX and Los Angeles offices);
- · Employment Litigation (LLF's NY office);
- · Asbestos and Toxic Exposure (LLF's TX and Los Angeles offices);
- · Intellectual Property (LLF's Palo Alto office);
- · Personal Injury (all LLF offices);
- · Products Liability (all LLF offices);
- · Medical Malpractice (LLF's NY, TX and Los Angeles offices);
- · Maritime Law (LLF's TX office); and
- · International Arbitration and Dispute (LLF's Los Angeles office).

LLF is nationally recognized as a leader in pharmaceutical litigation. At the core of our practice success is the belief that every pharmaceutical manufacturer must adequately warn physicians, consumers and the public at large about the side effects associated with all drugs on the market. Based on that belief, LLF has represented thousands of consumers with personal injury claims against some of the largest pharmaceutical manufacturers in the world, including but not limited to Merck, Pfizer Inc., Johnson & Johnson, GlaxoSmithKline, Eli Lilly & Company, Baxter Healthcare and Bayer Corporation.

LLF has been, or is currently involved in, the following multi-district pharmaceutical-related litigations:

- · *IN RE: Vioxx Marketing, Sales Practice and Products Liability Litigation*, MDL 1657, E.D.LA.;
- · *IN RE: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, MDL 1699, N.D.CA.;
- · *IN RE: Zyprexa Products Liability Litigation*, MDL 1596, E.D.N.Y.;
- · *IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, E.D.PA.;
- · *IN RE: Neurontin Marketing, Sales Practices and Products Liability Litigation*, MDL 1629, D.MA.;
- · *IN RE: Levaquin Products Liability Litigation*, MDL 1943, D.MN.;
- · *IN RE: Heparin Products Liability Litigation*, MDL 1657, N.D.OH.;
- · *IN RE: Digitek Products Liability Litigation*, MDL 1968, S.D.W.V.;
- · *IN RE: Fosamax Products Liability Litigation*, MDL 1789, S.D.N.Y.;
- · *IN RE: Chantix (Varenicline) Products Liability Litigation*, MDL 2092, N.D.AL.;
- · *IN RE: Trasylol Products Liability Litigation*, MDL 1928, S.D.FL.;
- · *IN RE: Viagra Products Liability Litigtion*, MDL 1724, D.MN.; and
- · *IN RE: Gadolinium Contrast Dyes Products Liability Litigation*, MDL 1909, N.D.OH.

LLF has also been involved in State Court litigations concerning the drugs Vioxx® (Atlantic County, NJ), Bextra®/Celebrex® (New York County, NY), Avandia® (Philadelphia County, PA), Neurontin® (New York County, NY), Levaquin® (Atlantic County, NJ) and Chantix® (pending in New York State). Additionally, Mark Lanier and Richard Meadow, Managing Attorney of LLF's New York office, have collectively held Plaintiffs Steering Committee positions in the above litigations concerning Vioxx®, Avandia®, Digitek® Bextra®/Celebrex®, Levaquin®, Heparin® and Zyprexa®.

Most notably, LLF was the lead trial counsel responsible for trying the liability case against Merck in three of the five trials in which juries found for plaintiffs. Indeed, LLF was the first law firm in the nation to successfully try a case against Merck concerning the drug Vioxx®. The result was a record-setting $253 Million verdict in favor of the plaintiff. Thereafter, LLF successfully tried the liability portion of two additional Vioxx® cases in the State of New Jersey, which further paved the way for a $4.85 Billion nationwide personal injury settlement. Merck won defense verdicts in eleven of the thirteen trials that LLF did not try. Had Merck continued to win every trial, the largest single national settlement in the history of mass tort litigation would either not exist, or it would undoubtedly have been far less favorable to plaintiffs. Additionally, as a result of LLF's success in the Vioxx® litigation, LLF was retained as trial counsel for the OAG for the State of Michigan to pursue claims against Merck for violations of the Michigan Medicaid False Claims Act and for unjust enrichment concerning Vioxx®.

In addition to representing individuals, The Lanier Law Firm has significant experience working on behalf of businesses suing for breach of contract, patent infringement, employment disputes, antitrust, fraud, and other causes of action. Our Commercial Litigation Practice Group helps businesses take on larger competitors who use unfair and illegal business practices to gain a competitive edge. Our aggressive approach to business litigation has resulted in several noteworthy recoveries for our clients. Although many of our recoveries are highly confidential, we have obtained substantial recoveries on behalf of the following clients:

- Retractable Technologies Inc., a syringe manufacturer, in an antitrust case against industry giant Becton Dickinson and Company, the world's largest manufacturer of medical syringes and needles, and Premier and Novation, two hospital Group Purchasing Organizations (GPOs), alleging anti-competitive conduct that foreclosed RTI from access to the multi-billion-dollar hospital market;

- In 2009, a $32.5 Million Settlement in an antitrust case.

- In 2007, a $60 Million Settlement in an antitrust case.

- Beginning in 2005, substantial jury verdicts in co-counseled Vioxx® trial cases that were instrumental in achieving settlement of the litigation for all Vioxx® clients.

- In 1998, a $118 Million verdict on behalf of 21 asbestos victims.

- In 1993, a $474 Million verdict for a small oil company in a business fraud case against one of the nation's largest oil providers.

3

- A major national pharmaceutical benefits provider in a $1.4 million breach of contract matter against a major New York metropolitan-area healthcare association.

- An individual who was employed as a news producer in a breach of contract claim against a major broadcast network, which resulted in a confidential settlement.

- A medical device patent holder alleging breach of contract and patent infringement against one of the world's largest manufacturers of medical products.

- A small company in the business of creating and licensing software suitable for industrial use in a breach of contract and fraud action against a large foreign corporation.

Recent commercial litigation cases handled by The Lanier Law Firm include:

- Representing a putative class of multifamily project mortgagors in a multi-billion dollar class action alleging claims concerning breaches of fiduciary duties by Federal National Mortgage Association. This action is currently on appeal before the United States Court of Appeal for the Fifth Circuit.

- Representation of a well-published musician in a copyright matter to determine the rights maintained by the musician and subsequent copyright claims against a record label.

- Representing a key leader in the oil and gas industry with respect to his ownership interest of a very successful exploration company in South Texas.

- Representing the Florida-based company 800 Adept Inc., an innovator and provider of telephone routing technologies, in litigation against the four largest wireless providers in the United States over patents for the routing of 911 emergency calls.

- Representation of businesses in lawsuits filed against Group Purchasing Organizations (GPOs) over allegations that the GPO has engaged in anti-competitive business practices that has restrained fair market competition and prevented our clients from gaining entry into a relevant market. (A GPO is an entity that leverages the purchasing power of a group of businesses to obtain discounts from vendors based on the collective buying power of the GPO members. Group purchasing is used in many industries, but it is common practice in the grocery, health care, electronics and agricultural industries.)

### d.  Conclusion

Substantial verdicts and settlements aside, The Lanier Law Firm uses the term "Legal Care" in describing its philosophy toward its clients. The reason for this is that at the core of LLF's philosophy is a focus on the person, group or business that truly requires a team member standing by to navigate the legal process. This is a top down philosophy that is related by founder Mark Lanier and permeates throughout the rest of the firm. We are honored to hold the hands of individuals as they seek justice. Whatever the case may be, if it's important to our clients, then it's a priority for us.

# EXHIBIT 5



Miller Law LLC is a litigation boutique law firm which unites the talents of attorneys with combined experience in a wide array of complex civil litigation. The foundation of the firm is the ability to handle large complex litigation and sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Our litigation experience covers a varied and broad range of industries including pharmaceuticals, telecommunications, commodities and securities.

Miller Law LLC's fees are contingent on our success in achieving a favorable result for our clients and are reviewed and awarded by the court. Because we advance the costs of the litigation and our fees are earned on a predominately contingent basis, we continuously monitor and carefully evaluate each case throughout the litigation and understand the need to be efficient. This gives us the confidence and flexibility to employ creative thought in the decision-making process at every stage of the litigation. The skill and experience of the Miller Law attorneys has been recognized repeatedly by their peers, at whose request we have served as co-lead counsel and *liaison*, and by courts, which have appointed our attorneys to leadership positions in complex multi-district or consolidated litigation in securities, commodities, consumer and antitrust class actions where we have been responsible for many outstanding recoveries and precedent-making decisions.

## Representative Pending Matters:

### Antitrust:

*Bayside Rubber & Prods., Inv. v. Bridgestone Indus. Prod. Am. Inc.,* 07-21784 (S.D. Fla.). This class action alleges that defendant-manufacturers of flexible rubber hose used to transport oil between ships, terminals, buoys and tanks, among other things, conspired to fix the prices of the marine hoses.

*Caldwell v. Matsushita Elec. Indus. Co., Ltd.,* 07-6303 (N.D. Cal.). Miller Law LLC, along with co-counsel represents a plaintiff who seeks damages and injunctive relief for alleged antitrust violations relating to flat screens.

*Cocoe Voci, Inc. v. YKK Corp.,* 07-9929 (S.D.N.Y.). Plaintiff alleges that the defendants rigged the prices of fasteners and zippers that are primarily used in the garment, apparel and footwear industries in violation of the federal antitrust laws.

*Cook v. Fidelity Nat'l Title Ins. Co.,* 08-731 (E.D.N.Y.). The complaint contains allegations of an illegal price-fixing agreement among title insurance companies in New York.

*Gasoline and Automotive Service Dealers v. Champion,* (D. Ct.). Plaintiffs seek injunctive relief and costs of suit under the antitrust laws of the United States for allegations that the Defendants engaged in price-fixing of aftermarket filters.

***In re Potash Antitrust Litig. No.II,*** MDL No. 1996, 08-cv-6910 (N.D.Ill.).  This case is brought on behalf of a class of plaintiffs who indirectly purchased potash products in the United States from one or more named Defendants between July 1, 2003 and the present.  Plaintiff alleges, that in order to maintain price stability and increase profitability, Defendants conspired and combined to fix, raise, maintain, and stabilize the prices for potash that was sold in the United States and that the Defendants exchanged sensitive, non-public information about prices, capacity, sales volumes, and demand; allocated market shares, customers and volumes to be sold; and coordinated on output, including the limitation of production, to further and enact the price fixing conspiracy.  On November 3, 2009, the Court denied in part Defendants' motion to dismiss the class action complaint.  Mr. Miller was appointed by the Court and serves as Interim Lead Counsel.

***In re Air Cargo Shipping Servs. Antitrust Litig.,*** 06-MD-1775 (E.D. N.Y.).  Miller Law LLC represents plaintiffs who seek recovery from air cargo shipping provider-defendants that it is alleged participated in a global conspiracy to fix prices charged for these shipping services at *supra*-competitive levels, in violation of the federal antitrust laws.

***In re Oxycontin Antitrust Litig.,*** 04-MD-1603 (S.D.N.Y.). The firm represents plaintiffs (consumers and third party payors) in these multidistrict class actions on behalf of purchasers of controlled-release oxycodone hydrochloride prescription tablets marketed under the brand name OxyContin®.

***Nizhnekamskneftekhim USA, Inc. v. CSX Transp., Inc.,*** 07-2809 (E.D.Pa.).  Miller Law LLC, along with co-counsel, filed a complaint on behalf of those who purchased directly from the Railroad Defendants "unregulated" rail freight transportation services on which rail fuel surcharges were assessed.

***Painters District Council No. 30 Health and Welfare Fund v. Evanston Northwestern Healthcare,*** 08-2541 (N.D. Ill).  Defendant Evanston Northwestern Healthcare is being sued for inflated prices for healthcare services in violation of antitrust laws.

***In re Wellbutrin XL Indirect Purchaser Antitrust Litig.,*** 08-2433 (E.D.Pa.), ***Painters District Council No. 30 Health and Welfare Fund v. Biovail Corp.***, 08-2688 (E.D. Pa.).  Plaintiff alleges that Defendants engaged in sham litigation and petitioning and anticompetitive agreements to maintain their monopoly profits in the bupropion HCI extended release market.

***Supreme Auto Transport LLC v. Arcelor Mittal,*** 08 C 5468 (N.D. Ill). This case was commenced an indirect purchaser class action against ArcelorMittal USA and others for their conspiracy to illegally price fixing of steel products sold to consumers  and  to artificially restrict the supply of steel products in the United States. Mr. Miller was appointed Interim Lead Counsel.

***Yoly Industrial Supply v. Horizon Lines, Inc.,*** 03:08-CV-434-J-32HTS (M.D.Fla.).  Complaint alleges antitrust violations by ocean shippers to raise, fix, peg, maintain or stabilize prices for Ocean Cabotage in the Puerto Rico trade.

2

*In re: Text Messaging Antitrust Litig.*, 08 C 7082 (N.D.Ill.). The Complaint in this Multidistrict Litigation seeks relief against the major cellular service providers because of alleged price fixing of text messaging charges. Mr. Miller has been appointed to the Plaintiffs' Steering Committee.

*In re Flonase Antitrust Litig.,* 08-3301 (E.D.Pa.). Plaintiffs allege that Defendants engaged in anticompetitive activities and abuse of the citizens petition process to maintain their monopoly profits in the fluticasone propionate market. Marvin Miller and Lori Fanning have been appointed Interim Co-Lead Counsel for the Indirect Purchaser Class along with another firm.

*Painters District Council No. 30 Health and Welfare Fund v. Boehringer Ingelheim, Int'l. GMBH and Boehringer Ingelheim Pharma., Inc.,* 09-1101 (W.D.Pa.). This case seeks injunctive relief, damages and other monetary and equitable relief from allegations of Defendants' violations of federal and state antitrust laws, state consumer protection laws and state common law principles of unjust enrichment on behalf of indirect purchasers of Mirapex.

*Scurto v. Unimed Pharma., Inc.,* 09-1900 (D.N.J.). This complaint seeks to recover for allegations regarding overcharges arising out of Defendants' unlawful delay and exclusion of generic competition from the market for Androgel and its AB-rated generic equivalents.

**Commodities:**

*Dennison v. BP Corp.*, No. 06-3334 (N.D. Ill.). This class action was commenced to recover damages as a result of defendant's alleged improper conduct in manipulating the price of propane. On November 6, 2009, the Court granted preliminary approval of the $15,250,000 cash settlement. Mr. Miller serves as Co-Lead Counsel in this consolidated Plaintiffs' class action.

*Kohen, et al. v. Pacific Investment Management Co.,* No. 05-4681 (N.D. Ill.). This class action seeks recovery for the alleged violation of the Commodity Exchange Act when the Defendants improperly manipulated the Ten-Year Treasury bonds. On July 31, 2009, the Seventh Circuit Court of Appeals affirmed the decision that this case can proceed as a class action. Mr. Miller, at the request of Lead Counsel, serves as *liaison* counsel for the Plaintiffs.

**Consumer Protection:**

**Predatory Lending**

*In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, MDL No. 1715, (N.D. Ill.). This large multidistrict national class action against this "subprime" lender, challenges Ameriquest's alleged predatory lending practices, "bait and switch", faulty appraisals, improper late fees and hidden costs, among other practices, and seeks damages and remedial relief on behalf of borrowers. At Plaintiffs' Co-lead counsel's request, Mr. Miller serves as *liaison* counsel.

In the following series of cases, Miller Law attorneys have been instrumental in putting together a nationwide coalition of counsel and have commenced and are participating in national class actions on behalf of plaintiffs who are seeking remedies for allegations of discriminatory effects of home

3

financing policies and practices. Those actions are against the leading mortgage lenders and include:

*J.P. Morgan Chase & Co. and Chase Bank U.S.A. N.A.*
*Chevy Chase Bank F.S.B.*
*Citifinancial Services, Inc. and Citigroup, Inc.*
*Countrywide Bank, Countrywide HomeLoans, Inc.*
*Decision One Mortgage Company, LLC, HSBC Finance Corp.*
*First Franklin Financial Corp.*
*Flagstar Bank, FSB*
*Fremont Investment and Loan and Fremont General Corporation*
*GE Money Bank*
*Greenpoint Mortgage Funding, Inc.*
*H & R Block, Inc., Option One Mortgage Corp. and Option One Mortgage Services*
*Long Beach Mortgage Co.*
*Washington Mutual Bank, F.A.*
*Wells Fargo Bank, N.A.*
*WMC Mortgage Corp. and WMC Mortgage, LLC*
*World Savings Bank*

### **Consumer Fraud:**

*In re Epogen and Aranesp Off-Label Mktg. and Sales Practices Litig.,* **MDL No. 1934,** *Painters District Local Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 07-6228 (N.D. Ill.) alleges unlawful off-label and otherwise deceptive marketing of recombinant protein biological drug products used to stimulate red blood cell growth and activation brought on behalf of a union "employee welfare benefit plan". Plaintiff seeks to represent a nationwide class of third-party payors.

*In re Ford Motor Co. E-350 Van Products Liab.,* 03-4558 (D.N.J.). Nationwide or multi-state class action alleges that the Ford E-350 "15-passenger vans" contain one or more defects which can cause rollover. Plaintiff claims, among other allegations, that Ford breached express and implied warranties.

*In re Mercedes Benz Tele-Aid Contract Litig.,* MDL No. 1914, No. 07-2720 (D.N.J.). Plaintiffs seek compensatory and other damages for allegations relating to Mercedes Benz' failure to inform Mercedes vehicle purchasers of Model Years 2002 through 2006 that their analog-only Tele Aid systems would become obsolete and would stop functioning after December 31, 2007. The court granted class certification on April 27, 2009.

4

**Employment:**

***Bergman v. Kindred Healthcare, Inc.,*** 10 C 191 (N.D. Ill).  The  firm filed this action with co-counsel to recover overtime wages for employees.

***Howard v. Securitas Security Servs.,*** 08-2746 (N.D. Ill.).  Miller Law LLC, along with co-counsel, seek to recover overtime wages for employees. The Court granted class certification in January 2009.

***Rodriguez v. CenturyTel, Inc.,*** 09-50006 (N.D. Ill.).  In this FLSA action, Miller Law LLC seeks overtime and other wages for employees.  The Court approved a settlement in September, 2009.

**Securities:**

***City of Livonia v. Boeing,*** 09 C 714 (N.D. Ill).  The was appointed *liaison* counsel in this securities class action which seeks recovery of damages resulting from the misrepresentations by the company in connection with the 787 Dreamliner.

***Lawrence E. Jaffe Pension Plan v. Household Int'l,*** 02-5893 (N.D.Ill.). The firm serves as *liaison* counsel in this securities fraud litigation alleging that Household engaged in a variety of illegal sales practices and improper lending techniques to manipulate publicly reported financial statistics.

***Makor Issues & Rights & Ltd. v. Tellabs,*** 02-4356 (N.D. Ill.). This securities fraud action alleges that Tellabs, a global supplier of optical networking, broadband access and voice-quality enhancement solutions to telecommunications carriers and internet service providers engaged in wrongdoing concerning certain of its core products. Mr. Miller serves as Liaison Counsel. The case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases.  *Tellabs v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499 (2007).  The court granted class certification on February 24, 2009.

***Mirsky v. Ulta Salon, Cosmetics and Fragrance Inc.,*** 07-7083 (N.D. Ill.). As alleged in the complaint, defendants issued materially false and misleading statements in connection with the IPO concerning ULTA's financial condition and the levels of its selling, general and administrative expenses inventories. The court preliminarily approved settlement on August 7, 2009.

***Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co.,*** 08-2162 (N.D. Ill.) This is a securities class action on behalf of purchasers of Walgreen common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

***Silverman v. Motorola,*** 07-4507 (N.D. Ill.).  Miller Law LLC serves as Liaison Counsel in this securities fraud action against Motorola –one of the world's largest producers of wireless handsets.  The court granted class certification on August 25, 2009.

***Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.,*** 09-4726 (N.D.Ill.) This is a securities class action on behalf of purchasers of Allscripts-Misys Healthcare Solutions, Inc. common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

***Jones v. Corus Bancshares, Inc.,*** 09-1538 (N.D.Ill.) Miller Law LLC serves as Liaison Counsel in this securities fraud action against Corus.

***Garden City Employees' Retirement System v. Anixter Int'l Inc.,*** 09-5641 (N.D.Ill.) This is a securities class action on behalf of purchasers of Anixter common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

***DeAngelis v. Huron Consulting Group, Inc.,*** 09-4766 (N.D.Ill.). This is a securities class action on behalf of purchasers of common stock of Huron Consulting Group during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

### Shareholder and Derivative actions:

***Murphy v. CDW Corp.,*** 07-3033 (N.D. Ill.). The firm represents a class of the public shareholders of CDW Corporation who sued the company and its directors for breach of fiduciary duties in connection their acceptance of the $7.3 billion buyout. The complaint alleges, among other matters, that the price does not reflect the true value of the company to its shareholders. The firm has been appointed *liaison* counsel for the class. The Court entered an order approving the settlement on May 7, 2008.

## Some of the additional significant cases in which Miller Law attorneys have been prominently involved include:

### Antitrust:

***Ryan-House v. GlaxoSmithKline PLC***, No. 02-442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. The case was resolved and the court approved a $29 million settlement for the benefit of consumers and third-party payors. *Ryan-House, et al v. GlaxoSmithKline, PLC, et al.*, No. 02-442, (January 10, 2005, E.D. Va.)

***In re Relafen Antitrust Litig.,*** 01-12239 (D. Mass.). The United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.

***In re Warfarin Sodium Antitrust Litig.***, MDL 98-1232 (D. Del.). A multi-district class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive

conduct that wrongfully suppressed competition from generic warfarin sodium. The case settled for $44.5 million which was affirmed on appeal. See *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).

*In re Cardizem CD Antitrust Litig.,* MDL No. 1278 (E.D. Mich.). Multi-district class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. The $80 million settlement for the benefit of third-party payors and consumers was granted final approval. *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003), *appeal dismissed*, 391 F.3d 812 (6th Cir. 2004).

*In re Synthroid Marketing Litig.,* MDL No. 1182 (N.D. Ill.). This multi-district action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. Final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999) was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

*In re Lorazepam & Clorazepate Antitrust Litig.,* MDL 1290 (D.D.C.). This multi-district class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlement on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

*In re Lithotripsy Antitrust Litig.,* No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.

*Brand-Name Prescription Drug Indirect Purchaser Actions*. Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multi-state settlement in the amount of $64.3 million, which was allocated among the actions.

*In Re Cellular Phone Cases*, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.). Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. The $35 million in-kind benefits to the Class was granted final approval.

*Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. The court granted final approval to two settlements that provided $165 million of in-kind benefits.

7

***Lobatz v. AirTouch Cellular***, 94-1311 BTM (AJB) (S.D. Cal.).  Class action alleging price-fixing of cellular telephone service in San Diego County, California.  The court approved settlements of $8 million in cash and other benefits.

 ***In re Airline Ticket Commission Antitrust Litig.***, MDL No. 1058 (D. Minn.).  Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

### Commodities:

***Smith v. Groover***, 77-2297 (N.D.Ill.).  A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing.  The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members.  Mr. Miller was one of Plaintiff's counsel in this precedent making decision.

***In re Soybean Futures Litig.***, No. 89-7009 (N.D. Ill.).  A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989.  In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).  Mr. Miller served as Co-Lead Counsel for Plaintiffs.

***In re Sumitomo Copper Litig.***, 96- 4584(MP) (S.D.N.Y.).  Class action arising out of manipulation of the world copper market.  On October 7, 1999, the court approved settlements aggregating $134,600,000.  *See* 189 F.R.D. 274 (S.D.N.Y. 1999).  In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999).  Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).  Mr. Miller was appointed by Judge Pollack as Plaintiffs' Co-Lead Counsel.

***In re Int'l Trading Group, Ltd. Customer Account Litig.***, No. 89-5545 RSWL (GHKx) (C.D. Cal.).  Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act.  The case settled with individual defendants and proceeded to a judgment against the corporate entity.  In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class.

***In re First Commodity Corp. of Boston Customer Account Litig.***, MDL-713 (D. Mass).  Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act.  The action settled for $5.3 million.  *See* 119 F.R.D. 301 (D. Mass. 1987).

### Securities:

***In re Sears, Roebuck and Co. Sec. Litig.***, No. 02-07527 (N.D.Ill.). Sears settled a class action lawsuit for $215 million in a case brought by shareholders. The case alleged breach of fiduciary duty for failing to prevent improper bankruptcy collection practices under the company's debt

reaffirmation agreements. Mr. Miller served as plaintiff's *liaison* counsel in this nationwide securities case.

***Abrams v. Van Kampen Funds*,** Case No. 01-7538 (N.D. Ill.), involving a mutual fund that was charged with improperly valuing its net asset value. After extensive discovery, the case settled for in excess of $31 million and was granted final approval.

***In re Baldwin-United Corp. Sec. Litig.*,** MDL-581, (S.D.N.Y.). In this early multi-district securities class action, Plaintiffs' counsel advanced the novel issue of whether Single Premium Deferred Annuities sold by the stock brokerage industry were securities and the sale of approximately $4.2 billion of were in violation of the federal and state securities laws. A $180 million settlement was obtained was the largest securities class action settlements at the time and remains one of the larger securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

***In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,** MDL 1005 (S.D.N.Y.). A nationwide multi-district class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. The final settlements produced an aggregate of more than $132 million for injured investors.

***In re Bank One Shareholders Class Actions*,** No. 00-880 (N.D. Ill.). In this securities fraud class action against Bank One and certain officers, Judge Milton I. Shadur appointed Mr. Miller to draft the Consolidated Class Action Complaint. At the request of court-appointed lead counsel, Mr. Miller served as Plaintiffs' *liaison* counsel. Judge Shadur subsequently approved a $45 million settlement.

***Central Laborers' Pension Fund v. Sirva, Inc.,*** 04-7644 (N.D. Ill.). A $53 million settlement was approved in this national securities class action which sought recovery from the defendant for violations of the securities laws because of the alleged failure to disclose to the investing public the true financial condition of the company. Mr. Miller served as Plaintiff's *liaison* counsel at the request of Lead counsel.

***Danis v. USN Communications, Inc.,*** No. 98-7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and subsequent bankruptcy of USN Communications, Inc. The court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000). At the request of Co-Lead Counsel, Mr. Miller served as *liaison* counsel for Plaintiffs.

***In re Caremark Int'l. Inc. Sec. Litig.*,** No. 94-4751 (N.D. Ill.). This action arose out of Caremark's allegedly improper financial arrangements with physicians. A $25 million settlement concluded the litigation.

***In re Nuveen Fund Litig.*,** No. 94-360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds.

*In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.).  A class action arising out of the Archer-Daniels-Midland price-fixing scandal.  Plaintiffs brought claims for securities law violations which settled for  $30 million.

*In re VMS Sec. Litig.*, 89-9448 (N.D. Ill.).  A securities fraud class action and derivative suit relating to publicly traded real estate investments.  The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991) and approved a class and derivative settlement worth $98 million.

*In re Salton/Maxim Sec. Litig.*, No. 91-7693 (N.D. Ill.).  Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock.  On September 23, 1994, Judge James S. Holderman (now Chief Judge of the United States District Court for the Northern District of Illinois) approved a multi-million dollar settlement achieved for the class, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

*In re Telesphere Sec. Litig.*, 89-1875 (N.D. Ill.).  In his opinion approving a class action settlement,  Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years [now 38 years] practice under his belt.  This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate."  753 F.Supp. 716, 719 (N.D. Ill. 1990).

*Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.).  A multi-million dollar settlement was approved in this securities fraud class action arising out of a broker's marketing of a speculative Australian security.  The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement."  855 F. Supp. 825, 831 (E.D.N.C. 1994).

*Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.).  A securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks."  Judgment in excess of $70 million was entered and that judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992).  *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

### Intellectual Property:

*Baxter Int'l v. McGaw, Inc.*, (N.D. Ill.).  Mr. Miller, together with co-counsel, successfully represented the Defendant in this patent infringement case and served as a member of the trial team which won a jury verdict of non-infringement of three needleless injection sites and also obtained a finding that the Plaintiff had engaged in inequitable conduct on two of the patents. The Court also found that the Plaintiff engaged in inequitable conduct. The decision was affirmed by the Court of Appeals Federal Circuit.  (96-1329,-1342, 97-1331,-1350 decided June 30, 1998).

10

*Acco Brands USA v. PC Guardian Anti-Theft Products, Inc.,* No. 06-7102 (N.D. Ill.). The firm represented one of the named defendants in this alleged patent infringement case.

### Other Representative Cases:

*In re Sears, Roebuck and Co., ERISA Litig.,* 02-8324 (N.D. Ill.). Mr. Miller served as plaintiff's liaison counsel in this nationwide action. Sears settled this ERISA action for $14.5 million in cash. The case alleged breaches of fiduciary duties in contravention of the Employee Retirement Income Security Act of 1974. The plan participants will directly benefit from the resulting settlement.

*PrimeCo Personal Communications, L.P. v. Ill. Commerce Comm'n.,* No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infra-structure maintenance fee imposed by municipalities on wireless telephone and pager customers in the State of Illinois. The court granted final approval to a settlement of more than $31 million paid by the City of Chicago. Subsequently, the court certified a settlement class of all wireless users in the State of Illinois and a Defendant Class of municipalities throughout the state which collected Infrastructure Maintenance Fees from wireless users and approved a settlement for the Class of in excess of $11 million. Mr. Miller served as a Co-lead counsel for Plaintiffs in this novel class action.

### Defendant Representations:

In addition to our representation of plaintiffs, Miller Law attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91-2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## Individual Biographies

*MARVIN A. MILLER*, has more than 37 years of commercial and class action litigation experience. Mr. Miller has been lead or co-lead counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions) that encompasses Miller Law LLC's practice. Mr. Miller holds an AV® (highest) rating from Martindale-Hubbell®. In January 2007, 2008, 2009 and 2010, Law & Politics and the publishers of Chicago Magazine named Mr. Miller an Illinois Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Illinois, as chosen by their peers and through the independent research of Law & Politics.

Prior to founding Miller Law LLC, Mr. Miller was a co-founder of another national class action law firm. Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders

and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation. He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub. nom.*, in *Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an Exchange for negligence in failing to supervise its members.

Mr. Miller is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*. He received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth, Seventh, Eleventh Circuit, and Federal Circuit, the United States District Courts for the Northern District of Illinois (including the Trial Bar), Southern District of New York, Eastern District of Michigan and Northern District of California. Mr. Miller is a member of the Chicago Bar Association and the Illinois State Bar Association and serves on the *Cy Pres* Committee of the Illinois Bar Foundation.

**LORI A. FANNING** concentrates her practice on complex class litigation in a wide range of matters before state and federal courts, primarily in the areas of consumer protection, antitrust and securities. She has prosecuted a variety of lawsuits involving the airline, banking, credit card, internet, pharmaceutical, and insurance industries. Ms. Fanning currently litigates securities fraud claims against such companies as Household International and Tellabs; antitrust claims against companies such as Unocal and Amgen; and has defended patent litigation on behalf of Datamation Systems, Inc. Ms. Fanning actively participated in the trial preparations for *In re Visa Check/MasterMoney Antitrust Litigation,* a civil antitrust case that settled for in excess of $3 billion on the eve of trial. Prior to attending law school, she enjoyed a successful career as a logistician with the United States government at the Naval Sea Systems Command in the Washington, D.C. area in support of Foreign Military Sales, new ship construction, and naval equipment. For her dedication, the Department of the Navy honored her with the Meritorious Civilian Service medal.

Ms. Fanning received her law degree, with honors and a Certificate in Litigation and Alternative Dispute Resolution, from the Illinois Institute of Technology/Chicago-Kent College of Law in 2000. She also holds a Master of Science in Administration from Central Michigan University (1993), and a Bachelor's degree from the University of Nebraska at Omaha (1986). She is admitted to practice in the state of Illinois and the federal district courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the United States Court of Appeals for the Seventh and Ninth Circuits. Ms. Fanning is a member of the American and Chicago Bar Associations and she volunteers for the CBA's Judicial Evaluation Committee.

### *OF COUNSEL*

**MATTHEW E. VAN TINE** focuses his practice on antitrust, securities fraud, and consumer protection matters. He has participated in the prosecution and defense of many securities, antitrust, and consumer class actions over the past two decades including securities litigation against Van

Kampen Funds and Baxter International; antitrust class actions involving nurses' wages, the drug warfarin sodium (Coumadin), and an industry-wide effort to raise drug prices paid by retail drug stores (the Brand Name Prescription Drug Antitrust Litigation); and litigation on behalf of consumers challenging an unconstitutional fee imposed on wireless and landline phone customers. Before associating with Miller Law LLC, Mr. Van Tine was affiliated with two other class action boutique law firms for fourteen years. Mr. Van Tine has also practiced with large law firms in Chicago and Boston, and served as an Assistant Corporation Counsel for the City of Chicago Law Department.

Mr. Van Tine received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island. Mr. Van Tine's practice admissions include the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago and American Bar Associations, and served as a past President of the Abraham Lincoln Marovitz American Inn of Court.

***ASHER RUBIN*** received his B.A. degree from Columbia University in 1958 and his J.D. degree from Harvard Law School in 1961. After completing law school, Mr. Rubin clerked at the California Supreme Court. Mr. Rubin served as Deputy Attorney General for the State of California from 1963-1966. He was a San Francisco Chronicle Foreign Correspondent and on the staff of the Weizmann Institute after which he served as an attorney and advisor to the Peace Corps until 1968. In 1969, Mr. Rubin returned to serve as Deputy Attorney General for the State of California until 2001 when he established his own law firm. Mr. Rubin has argued before the United States Supreme Court and the California Supreme Court as well as the appellate and trial levels of state and federal courts. He has taught Administrative Law for the California Attorney General, taught evidence, and lectured at Hastings Law School. He has also been published in The San Francisco Chronicle, Newsweek and the Harvard Law Bulletin.

13

# EXHIBIT 6

**EXHIBIT 6**

- *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-CV-1398 (JWB) (D.N.J.) [Milberg and Harwood Feffer as Co-Lead Counsel];

- *In re Boston Scientific Corp. ERISA Litig.*, No. 06-CV-10105 (D. Mass.) [Milberg and Harwood Feffer as Co-Lead Counsel];

- *Shanehchian v. Macy's Inc.*, No. 07-CV-00828 (S.D. Ohio) [Milberg and Harwood Feffer as Co-Lead Counsel];

- *In re Morgan Stanley ERISA Litig.*, No. 07-CV-11285 (S.D.N.Y.) [Milberg as Co-Lead Counsel; Harwood Feffer on Executive Committee];

- *West v. Wellpoint, Inc.*, No 08-CV-617, (S.D. Ind.) [Harwood Feffer as Co-Lead Counsel; Milberg on Executive Committee];

- *Morse v. McWhorter*, No. 97-CV-00370 (M.D. Tenn.) [Harwood Feffer as Lead Counsel; Milberg on Steering Committee];

- *In re Colonial Bancgroup, Inc. ERISA Litig.*, No. 09-CV-792-MHT-WC (M.D. Ala.) [Harwood Feffer as Co-Lead Counsel, Milberg providing substantial assistance];

- *In re First American Corp ERISA Litig*, No 08-CV-617 (C.D. Cal.) [Milberg and Harwood Feffer as members of four-way Co-Lead counsel]

- *In re Baldwin-United Corp. Securities Litig.,* MDL-581 (S.D.N.Y.) [Milberg/Harwood/Miller Law];

- *Makor Issues & Rights & Ltd. v. Tellabs*, No. 02-CV-4356 (N.D. Ill.) [Milberg/Miller Law];

- *In re Sears Roebuck and Co. Sec. Litig.,* No. 02-CV-07527 (N.D. Ill.) [Milberg/Miller Law]

- *Supreme Auto Transport LLC v. Arcelor Mittal,* No. 08-CV-5468 (N.D. Ill.) [Milberg/Miller Law LLC];

- *In re Bank One Shareholders Class Actions*, No. 00-880 (N.D. Ill.) [Harwood Feffer as Lead Counsel; Miller Law as Local Counsel]**;**

- *In re General Growth Properties, Inc. ERISA Litig.*, No. 08-CV-6680 (N.D. Ill.) [Harwood Feffer as Co-Lead Counsel; Miller Law as Local Counsel]

- *In re VMS Sec. Litig.*, No. 89-9448 (N.D. Ill.) [Milberg/Harwood/Miller Law];

- *In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill.) [Milberg/Miller Law]

- *Chu v. Sabratek Corp.,* No 99-CV-0351 (N.D. Ill.) [Milberg/Miller Law]

- *Sutton v. Bernard*, No. 00-CV-6676 (N.D. Ill.) [Milberg/Miller Law]

- *Mittleman v. Kilrea*, 02-0270 (N.D. Ill.) [Milberg/Miller Law]

- *In re Potash Antitrust Litig.*, No. 08-CV-06910 (N.D. Ill.) [Milberg/Miller Law]

- *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, E.D. Pa. [Lanier/Milberg]

- *In re Zyprexa Products Liability Litigation*, MDL 1596, E.D.N.Y. [Lanier/Milberg]

- *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, MDL 1699, N.D. Ca [Lanier/Milberg]

- *Casa Orlando Apartments Ltd., et al v. Federal National Mortgage* 05:04-129 (E.D. TX.) [Lanier/Milberg]